422 So.2d 729 (1982)
S. Neal SIMMONS and Sammye Cooper Simmons, Plaintiffs-Appellees,
v.
D.V. TOLIVER, Defendant-Appellant.
No. 82-256.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1982.
Rehearing Denied December 28, 1982.
*730 Griffing & Humble, George Griffing, Jonesville, for defendant-appellant.
Smith, Taliaferro, Seibert, Boothe & Purvis, V. Russell Purvis, Jonesville, for plaintiffs-appellees.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
DOMENGEAUX, Judge.
In this suit, plaintiffs seek to have established the boundary line between their property and that of the defendant. The parties own adjoining tracts of land in the northern portion of Catahoula Parish, Louisiana. Following institution of this suit, the trial court appointed James M. Hawkins, Jr., a registered land surveyor, to locate the ideal boundary between the respective properties of the parties. Mr. Hawkins conducted a survey pursuant to the court's order and his "proces verbal of survey" was filed with the court together with a large scale drawing which reflects location of the ideal boundary between the properties of the parties and the topography of the area including fences, roads, etc. Neither of the parties question the accuracy of Hawkins' location of the ideal boundary. However, defendant, by reconventional demand, claims that he acquired a portion of the Simmons' property located east of the ideal boundary line by virtue of the running of thirty years acquisitive prescription. Specifically, defendant claims that his ownership extends east of the ideal boundary to a gravel road or "slide trail" which traverses the Simmons' property in a north-south direction. He alleges that a fence located adjacent to such trail had been maintained by him and his ancestor-in-title, Mose Johnson, for a period in excess of thirty years. In his reconventional demand, defendant claimed further that he was entitled to recover $50,000.00 in damages, with legal interest, to compensate him and his wife for severe emotional distress and suffering. *731 He asserts that the plaintiffs caused this by coming onto his property without his consent and erecting three oversized creosote posts pursuant to a survey conducted for them by Mr. Kenneth McKay, and by arbitrarily refusing to provide the defendant with a copy of the survey plat.
In order to establish the age of the fence and the extent of his possession, the defendant called five witnesses at trial who testified that the fence had been in existence for at least thirty years. The plaintiffs, on the other hand, countered the defendant's position by introducing the testimony of two other witnesses who averred that the fence running along the western edge of the slide trail had been in existence for a period of time not exceeding fifteen to eighteen years.
The trial judge sought to resolve this conflict between the plaintiffs' witnesses and those of the defendant by subsequently adjourning the proceedings to the site of the property in question. He directed that only counsel for both sides would be allowed to accompany him when he went to make his inspection.
At this point, the trial transcript no longer reflects the transactions that took place outside of the courtroom. In order to rectify this situation, the plaintiffs made a motion to correct and supplement the record. The defendant was ordered to show cause why such motion should not be granted on August 2, 1982. During the court proceedings which took place on that date, the trial judge supplied a Per Curiam which detailed his own recollections of the transactions which occurred outside of the courtroom.
In the trial judge's Per Curiam, he stated that after his inspection, it was apparent to him that the fence referred to by the defendant's witnesses was not as old as they had testified it was. His inspection also revealed that part of the wire on the fence had been attached to two trees, which had actually grown over the wire strands through the years.
The judge thereby suggested to the attorneys that an expert be chosen to come and examine the trees in order to determine the exact date that the wires had been attached to them. He asked the attorneys for suggestions concerning the availability of a local expert in the forestry field. On December 2, 1981, counsel for the defendant responded to the judge's request, supplying him with the names of two persons that the defendant deemed satisfactory to examine the trees.
Subsequently, arrangements were made for Mr. Merlin Smith, one of the two persons recommended by defense counsel, to visit the disputed property on January 12, 1982, and examine the two trees. In his Per Curiam, the trial judge stated that neither the plaintiffs' attorney nor the defendant's counsel objected to the procedure. On January 21st, the judge and the attorneys met with Mr. Smith. Smith cut out portions of the two trees in which the fence wire was imbedded, and took them to his office for examination. The next day, Smith furnished a report containing his findings to the trial judge, and copies of the report were immediately forwarded to the attorneys. In the judge's Per Curiam, he states that after this, he contacted both attorneys advising them of their right to cross-examine Mr. Smith in open court after he formally presented his report, which according to the judge, both parties waived.
Subsequently, the trial court rendered its decision, concluding that the defendants had not possessed for a period of thirty years up to the fence located adjacent to the gravel road or "slide trail". The court determined that the boundary should be set some distance east of the ideal boundary line, as established by Hawkins, placing the boundary between the respective properties of the parties as follows:
"It is therefore my opinion that the boundary of the properties should be fixed on the southeast corner at the point where the old net wire fence virtually intersects the new barb wire fence.[[1]] *732 The boundary should then proceed in a northerly direction along the old net wire fence as shown on the plat and a projection thereof toward a connection with the old net wire fence on the east side of the cemetery to a point where it intersects the true line, as indicated on the survey. From that point, the boundary should follow the ideal line until it intersects the center line of Louisiana Highway 915."
Furthermore, the trial court dismissed defendant's claim for damages. From this judgment the defendant devolutively appealed. Plaintiff has neither appealed nor answered the appeal.
The defendant alleges that the trial judge erred in making two post-trial inspections of the disputed property in order to determine where the boundary should be set. Furthermore, he claims that the court was in error in retaining the services of Merlin B. Smith to assist in determining where the boundary was to be set, when Smith had not been called as a witness by either side, was never sworn in, and was not subject to cross-examination. In addition, he asserts that the court erred in admitting the letter of Merlin Smith dated January 22, 1982, into the record. He also argues that the court was mistaken in deciding the case based on post-trial data improperly developed by an outside consultant at the site of the disputed tract of land.
We are unable to agree with the defendant's arguments. The Code of Civil Procedure specifically grants trial judges the power to appoint experts. La.C.C.P. Article 192 states:
"A trial court, on its own motion or on motion of a party, may appoint persons learned or skilled in a science, art, profession, or calling as experts to assist it in the adjudication of any case in which their special knowledge or skill may aid the court.
The reasonable fees and expenses of these experts shall be taxed as costs of court."
Therefore, the Judge was not in error in seeking the services of Merlin Smith in order to establish the age of the fence running along the slide trail.
More importantly, it is our opinion that the defendant is mistaken in arguing that the two inspections made by the trial judge and the findings of Merlin Smith were not properly a part of the evidence on which the trial court could base its decision. We feel that the record clearly indicates that the defendant acquiesced in both the judge's right to examine the disputed property and in the appointment of Merlin Smith to examine the fence and the trees. Furthermore, it is apparent to us that Toliver waived any rights that he had to cross-examine Mr. Smith on his findings and that Smith's testimony is properly a part of the record due to the defendant's failure to file any objections to the evidence.
The record provides ample support for these conclusions. At the end of the court proceedings, the statements of Mr. George Griffing, counsel for the defendant, indicate that he had no objection to the judge's request to visit the site of the disputed tract the following morning:
"Mr. Griffing: Judge, what time are you talking about in the morning?
Judge: I'd like to meet fairly early.
Mr. Griffing: That would be fine ... early. I kind of scheduled ... I kind of schedule on Friday clients to come in on Friday mornings and I have about
...
Judge: Well, I don't have to do it tomorrow but, see, I'm not going to be here for two weeks now. I'm not going to be in Catahoula next week. It's Thanksgiving week ... it's my Concordia week and then the 30th is a fifth Monday week and I'm in Concordia that week and I've got a full week of criminal jury trials that week, so I'll...
Mr. Griffing: I prefer that you do it soon and while it's fresh on your mind."
*733 In addition to this, the letter written by Mr. Griffing to the trial judge on December 2, 1981, in which he recommended two foresters to the court (one of which was Mr. Merlin Smith) indicates that the defendant must have acquiesced in the necessity of having an expert examine the property. Mr. Griffing clearly stated in that letter that any of the foresters mentioned would be satisfactory to the defendant if the court still felt that an expert was necessary to resolve the matter. Clearly, the defendant cannot validly object to the appointment of Mr. Smith as an expert when he was the one that recommended Smith to the court.
The defendant is also incorrect in arguing that the report submitted by Merlin Smith cannot be considered by the court because it was never properly introduced into evidence, and because Smith was not subject to cross-examination. In this connection, the trial judge in his Per Curiam stated:
"... On the 22nd day of January, 1982, Mr. Smith then furnished me his report, which was filed. A copy of this report was immediately furnished to Mr. Griffing and Mr. Purvis. Thereafter I contacted both attorneys, advising them that I would have Mr. Smith return to Court so that he could formally present his report in Open Court and be subject to cross examination. Both parties advised me that they did not wish to avail themselves of this opportunity and that the case should be considered as submitted."
The defendant was given ample opportunity to present evidence contradicting the judge's recollections during the proceedings held on the motion to correct and supplement the record, but he failed to do so. Furthermore, the record is devoid of any showing that the defendant ever objected to the introduction of Merlin Smith's letter of January 22, 1982, into the record. Due to the failure of the defendant to object to the admission of the letter under the circumstances stated, we can only conclude that the trial judge's memory was accurate and that the defendant waived his right to cross-examine Smith and to object to the admission of Smith's report into the record.
The defendant also alleges that the trial court erred in deciding the case on improperly obtained post trial testimony, rejecting the testimony of defendant's witnesses, and determining that the boundary line was not to be set along the slide trail. However, the trial judge is entitled to a great deal of discretion in determining credibility of witnesses and is not to have his findings of fact overturned on appeal unless clearly wrong. We do not feel that the trial judge committed manifest error in this case, and we therefore affirm his findings.
Defendant further cites as error the decision of the trial judge to cast him liable for one-half of the costs at trial. He claims that the plaintiffs' failure to present the defendant with a copy of the plat prepared by their surveyor prior to institution of the suit constituted a failure to amicably settle the dispute, and that because of this, the plaintiffs should be cast with all costs.
Article 790 of the Civil Code provides:
"... When the boundary is fixed extrajudicially costs are divided equally between the adjoining owners in the absence of contrary agreement. When the boundary is fixed judicially court costs are taxed in accordance with the rules of the Code of Civil Procedure. Expenses of litigation not taxed as court costs are borne by the person who has incurred them."
Article 2164 of the Code of Civil Procedure also provides that an appellate court may "... tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."
It is our judgment that it would be most equitable in this case to assess the costs just as the trial judge chose to do by assigning them equally to both parties. The testimony of Neal Simmons clearly indicates that he sought to save costs by merely having his surveyor mark the corners of the property rather than prepare a plat, and that the plat was actually not prepared until just before the trial. Under *734 these circumstances, we would deem it inequitable to tax all costs against the plaintiffs.
Finally, the defendant asserts that he is entitled to recover on his reconventional demand for damages for mental distress. He argues that the actions of the plaintiffs in erecting three massive creosote posts constituted a willful and deliberate trespass entitling him to recovery.
We find no error in the trial court's dismissal of the defendant's claim. Neal Simmons testified that he had attempted to place the three posts right on the boundary line marked by his surveyor with metal stakes. Mr. Toliver never challenged the survey made by Simmons, nor the fact that the plaintiff was the record owner of the land. Based on these facts, we cannot say that the judge's denial of damages to the defendant for infliction of mental distress constituted an abuse of discretion.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs on appeal are assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] Footnote by Court of Appeal. The old net wire fence determined by the court to be the boundary between the respective properties of the parties is not the fence located adjacent to the gravel road or "slide trail".