KING, Judge.
The issues presented in this appeal are (1) whether or not the trial court erred in finding that plaintiff was totally and permanently disabled under the Louisiana Workmen’s Compensation Statute, and (2) whether or not the trial court erred in failing to find that the defendants were liable for penalties and attorney’s fees.
This is a workmen’s compensation action brought by Bruce Fontenot (hereinafter referred to as plaintiff) against his employer, Sunland Construction Company (hereinafter referred to as Sunland), and its workmen’s compensation insurer, Organ & Company, Ltd. (hereinafter referred to as Organ), for workmen’s compensation benefits because of an accident which occurred on October 28, 1981, when plaintiff, while operating a bulldozer, incurred an injury as a result of being struck in the left eye by a piece of wood. The plaintiff’s employment, rate of weekly compensation, and the occurrence of the accident were stipulated to by the parties. The trial judge found plaintiff to be totally and permanently disabled, but did not award penalties and attorney’s fees. Defendants appeal the trial court’s finding of total and permanent disability. Plaintiff appeals the trial court’s refusal to award penalties and attorney’s fees. We affirm.
FACTS
On October 28, 1981, plaintiff, a bulldozer operator in the employ of Sunland, was struck in the left eye by a splinter from a piece of wood while he was working for his employer clearing a right-of-way with his bulldozer. This work was covered by the provisions of the Louisiana Workmen’s Compensation Act. Organ provided workmen’s compensation insurance coverage to Sunland at the time of the accident.
After the accident, plaintiff was examined by Dr. R. Bruce Wallace III, a qualified ophthalmologist. Dr. Wallace’s deposition was admitted into evidence. At the time of his examination Dr. Wallace found that plaintiff had a large scleral laceration on the left eye, with some contents of the eye exuding from the laceration, as well as a large lid laceration. Plaintiff underwent surgery to have the lacerations repaired.
Dr. Wallace, who performed the surgery, testified that after the surgery plaintiff had no light perception vision in the left eye, but that the eye looked relatively good for the extent of the injury. However, the left eye later began to shrivel and become soft and painful (a condition known as tisis bulbi) and on June 16, 1982, plaintiff underwent another operation to remove the left eyeball (evisceration) and to put an artificial eyeball implant in place.
Dr. Wallace testified that plaintiff did not complain of any injury to or vision impairment of his right eye at the time of the accident and initial treatment. Dr. Wallace did not find any signs of injury in the right eye at the time of his initial examination and treatment. Plaintiff however testified that the vision in his right eye was blurred when the bandages were first removed from his face.
Prior to the date of the accident, plaintiff never wore glasses or complained of any vision problems. Dr. Wallace testified that on November 3, 1981, plaintiff’s vision in his right eye was 20/30 without the use of eyeglasses, and that this would have been the vision in plaintiff’s right eye on the date of the accident (which occurred several days before). On December 1, 1981, Dr. *951 Wallace fitted plaintiff with eyeglasses that corrected the vision in plaintiffs right eye to 20/20 (considered normal). Dr. Wallace also testified that the vision in plaintiffs right eye was still 20/20 with the use of the same pair of glasses in June, 1982.
Plaintiff did not complain about the vision in his right eye until February 24, 1988, almost one and one-half years after the accident. On this date, Dr. Wallace found plaintiff to have 20/25 ±3 (almost 20/20) vision in the right eye with a new eyeglass prescription. A year later, on February 21, 1984, Dr. Wallace examined plaintiff again and found plaintiff to have vision in his right eye that was correctable to 20/30 with glasses.
Dr. Wallace diagnosed the plaintiff as suffering from a slowly progressive senile type of cataract in his right eye. Dr. Wallace testified that in the future plaintiff may need to have an operation to correct the vision in his right eye (removal of the cloudy lens and replacement with an artificial lens implant) if the cataract growth grows progressively worse. Dr. Wallace also indicated that there would be a ninety-five percent (95%) chance that plaintiff would see 20/40 or better after such an operation was performed. According to Dr. Wallace, 20/40 vision is sufficient to pass a driver’s test in the State of Louisiana, and would probably be sufficient to allow plaintiff to read the newspaper.
Dr. Wallace was questioned regarding any causal connection between the development of the cataract in plaintiffs right eye and the accident of October 28, 1981. Dr. Wallace stated that it was probable that the cataract condition was not related to plaintiff’s injury due to “... the long term slow growth of this type of cataract ... and this ... the general appearance of the cataract, and the fact that his age is compatible with his condition.” He also stated that he did not know of any documented medical evidence which showed that trauma to any part of the body enhanced cataract growth.
Dr. Wallace released plaintiff to return to work in November, 1982 with the restrictions that plaintiff not operate heavy equipment and that he wear safety glasses at all times. Dr. Wallace stated that the restrictions were designed mainly to protect plaintiff’s remaining eye. The doctor confirmed these restrictions in a letter to Sunland in February, 1983. Plaintiff has never actually returned to any type of work.
Plaintiff testified at trial. He stated that he suffered from unclear vision in his right eye almost immediately after the bandages were removed from his face, and that his sight had subsequently deteriorated. The evidence showed that plaintiff was 67 years old at the time of trial, was of limited intelligence and only had a sixth grade education. The only type of work that he has performed for many years was that of a bulldozer operator. Prior to 1968, plaintiff was a share farmer who farmed land he rented from other people. At the time of trial, plaintiff was receiving $617.00 per month in Social Security benefits.
Defendants paid plaintiff 100 weeks of compensation benefits at $183.00 per week. After that time, defendants discontinued the payments, being of the opinion that they had satisfied their statutory obligations by paying the maximum amount for loss of an eye as prescribed by LSA-R.S. 23:1221(4)(c).
Plaintiff then filed this suit on December 9, 1983 seeking total and permanent disability benefits and penalties and attorney’s fees for defendant’s arbitrary and capricious failure to pay such benefits. After trial on May 3, 1984, the trial judge took the matter under advisement and then rendered written reasons for judgment awarding plaintiff workmen’s compensation benefits for total and permanent disability, but denying imposition of penalties and attorney’s fees. A formal judgment was signed and both plaintiff and defendants timely appeal.
SCOPE OF THE PLEADINGS
Defendants first maintain that the trial court erred in admitting evidence relating to any injury that the accident may have *952 caused to plaintiffs right eye, in light of the fact that plaintiff’s petition did not specifically allege such injury nor did plaintiff move to amend his pleadings to make mention of such injury after defendants at the trial made timely objection to the introduction of such evidence. See LSA-C.C.P. Art. 1154.
This court in Goodley v. Brunet, 150 So.2d 804 (La.App. 3rd Cir.1963), writ den., 244 La. 400, 152 So.2d 213 (1963), stated that:
“In a workmen’s compensation proceeding, ‘the court shall not be bound by technical rules of evidence or procedure’, LSA-R.S. 23:1317. In the absence of prejudice, variance between allegata and probata is freely permitted in compensation proceedings, providing the opposing party has had notice and a reasonable opportunity thereafter to present opposing evidence. Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522; Bassemier v. W.S. Young Const. Co., La.App. 1 Cir., 110 So.2d 766, certiorari denied; Gagliano v. Boh Bros. Const. Co., La.App.Orl., 44 So.2d 732.” Goodley v. Brunet, 150 So.2d 804, at page 805 (La.App. 3rd Cir.1963).
The record in this case clearly shows that defendants had full notice of plaintiff’s cataract condition and its effect on his claimed disability from the time they deposed Dr. Wallace, the treating physician, over ninety days before the scheduled trial, when it should have become obvious to defendants that a substantial issue in this case was the subsequent development of the cataract in plaintiff’s right eye insofar as it affected his claim for disability. Thus, defendants had adequate time and ample opportunity to obtain and present opposing evidence had they chosen to do so.
One of the issues presented for trial was plaintiff’s claim for total and permanent disability benefits. The condition of plaintiffs right eye, considered in light of the loss of his left eye in the accident, was relevant to this issue. It is within the discretion of the trial judge whether or not to allow evidence objected to on the ground that it is not within the issues made by the pleadings. Mouledous v. Poirier, 221 So.2d 291 at 296 (La.App. 4th Cir.1969). The trial judge was obviously of the opinion, as are we, that defendants did not adequately demonstrate that the admission of such evidence relating to the plaintiff’s right eye condition was prejudicial to their defense or not relevant to the issue presented by plaintiff’s claim. We therefore find no abuse of discretion on the part of the trial judge in the admission of such evidence.
TOTAL AND PERMANENT DISABILITY
Defendants contend that the trial judge committed manifest error in finding that plaintiff was totally and permanently disabled as a result of the injury he sustained in the accident.
Defendants argue that even if the evidence regarding plaintiff's right eye condition was properly admitted into evidence, that the plaintiff still did not prove that the cataract condition in his right eye was causally related to the accident, and thus it was improper for the trial judge to take into consideration the effects of the cataract on plaintiff’s vision in his determination of plaintiff’s disability. Defendants also contend that even if the effects of the cataract are considered, plaintiff did not prove that he was rendered totally and permanently disabled.
Although the trial judge’s Written Reasons For Judgment are unclear regarding whether or not the trial judge relied upon the effects of the cataract condition in the plaintiff’s right eye in reaching a conclusion as to disability, it is unnecessary for us to address this issue. The evidence in the record reveals that the accident caused the loss of plaintiff’s left eye. The evidence presented at trial clearly shows that plaintiff, as a result of the loss of his left eye (excluding any reference to the condition of his right eye) combined with other factors to be considered under the workmen’s compensation law in effect at *953 the time of the accident, is totally and permanently disabled.
As was explained by this court in Woodard v. Gregory and Cook, Inc., 442 So.2d 912 (La.App. 3rd Cir.1983):
“The odd-lot doctrine entitles an employee to compensation for total disability when, as a result of a compensable injury, he is rendered unable to perform any services for which a reasonably dependable market exists. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981). An odd-lot claimant need not be absolutely helpless to qualify for total disability status. If the claimant can prove that his physical condition, his mental capacity; his education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd-lot category. The employer or insurer must then show that some form of suitable work is regularly and continuously available to the claimant in the area where he resides. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).” Woodard v. Gregory and Cook, Inc., 442 So.2d 912, at page 914 (La.App. 3rd Cir. 1983).
The record reflects that plaintiff’s ability to work and obtain work has been detrimentally affected by the loss of his left eye. Plaintiff is a sixty-eight year old man. He is of limited intelligence and only has a sixth grade education. He has no special schooling or training and possesses no skills other than farming and operating a bulldozer. He has been a laborer for his entire life. Since 1968 the only type of work he has performed has been that of a bulldozer operator. Before that he was a share farmer who owned no farmland of his own. According to plaintiffs testimony, he is unable to now work at either of these occupations because of the loss of his left eye. Even Dr. Wallace, when he released plaintiff to go back to work, placed restrictions on him that he was not to operate heavy machinery. The doctor also testified that it was unlikely that plaintiff could get a chauffeur’s license with only one good eye. Plaintiff has proven that he is at a substantial disadvantage in the competitive labor market to obtain work as a result of the loss of his left eye and because of his education, age and training.
Based on the combination of these facts, plaintiff has made out a prima facie case for classification in the odd-lot category. Having done so, it became defendants’ burden to show that some form of suitable work was regularly and continuously available to plaintiff in the area where he resides. The record reflects that defendants presented no evidence whatsoever to show that there was such suitable work available to plaintiff.
For the reasons set forth above, we find that the trial judge’s finding that plaintiff was totally and permanently disabled as a result of the loss of his left eye is not clearly wrong or manifestly in error. Haas v. Estate of Ledoux, 427 So.2d 12 (La.App. 3rd Cir.1983); Simmons v. Toliver, 422 So.2d 729 (La.App. 3rd Cir.1982), writ den., 429 So.2d 155 (La.1983).
ATTORNEY’S FEES AND PENALTIES
On appeal plaintiff maintains that the trial judge erred in finding that plaintiff was not entitled to penalties and attorney’s fees.
Under the law applicable at the time of the accident, LSA-R.S. 22:658, a compensation insurer is liable for penalties and attorney’s fees if the insurer’s refusal to pay compensation benefits is found to be arbitrary, capricious, or without probable cause. Olson v. Ins. Co. of State of Pa., 471 So.2d 1151, 1155 (La.App. 3rd Cir.1985), writ den., 476 So.2d 352 (La.1985). However, if a substantial question of liability is at issue, an employer and insurer are justified in discontinuing compensation payments and the award of penalties and attorney’s fees are not appropriate. Schepp v. Olin Corp., 445 So.2d 1280 (La.App. 3rd Cir.1984), writ den., 448 So.2d 117 (La. 1984).
*954 In this case, due to the complexity of the issues of disability and causation and the fact that defendants paid full benefits for a scheduled loss, we are of the opinion that defendants’ termination of compensation payments was not arbitrary, capricious, or without probable cause even though plaintiff was ultimately found to be entitled to total and permanent disability benefits. Therefore, we find that the trial judge was not clearly wrong in denying plaintiff’s claim for penalties and attorney’s fees.
For the reasons given above, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to plaintiff-appellant and one-half to defendants-appellants.
AFFIRMED.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.