STOKER, Judge.
The parties in this suit disagree concern *608 ing the right of the defendant[1] to a reduction of workers’ compensation benefits owed to the disabled plaintiff, Bruce Fonte-not. The plaintiff seeks reversal of the trial court’s ruling on two grounds: (1) plaintiff urges that defendant is entitled to no reduction at all, but (2) if defendant is entitled to reduction, then the trial court erred in its method of computing the amount of the reduction. The defendant takes the position that the trial court’s judgment is correct.
We reverse and remand.
BACKGROUND
This worker’s compensation case has been before us previously. Fontenot v. Sunland Const., 482 So.2d 949 (La.App. 3d Cir.1986). Our decision was rendered on February 5, 1986, and became a final judgment. In that phase of this matter we affirmed the trial court, holding that plaintiff was entitled to workers’ compensation benefits for total and permanent disability rather than being confined (as the defendants in that proceeding contended) to one hundred weeks of compensation under the schedule of benefits.
The trial court’s judgment in the phase of the case referred to above, dated August 10, 1984, provided in part:
“IT IS ORDERED, ADJUDGED AND DECREED that there be a judgment herein in favor of plaintiff, BRUCE FONTENOT and against the defendants, SUNLAND CONSTRUCTION COMPANY and ORGAN & COMPANY, LTD., declaring plaintiff to be totally and permanently disabled.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, BRUCE FONTENOT and against the defendants, SUNLAND CONSTRUCTION COMPANY and ORGAN & COMPANY, LTD., awarding benefits of $183.00 per week, commencing October 28, 1981, and to continue during his period of disability, plus all medical expenses incurred or to be incurred as a result of this accident, together with incidental expenses, such as travel and so forth, plus 12% per cent interest on all past due installments from due date, until paid, all subject to a credit for the sums previously paid by defendants and further subject to a reduction in the amount of $617.00 per month, for the period plaintiff has received Social Security Benefits.” (Emphasis added.)
The language of the judgment emphasized above is what gives rise to the present controversy.
FACTS RELATIVE TO THE PRESENT PHASE OF THE CASE
As used, the term “Social Security Benefits” is not specific and makes no reference to the particular kind of social security benefits to which the term was intended to apply.
Proceeding by rule the plaintiff made several attempts to bring the issue to a head which were not pursued. Finally, on June 12, 1989, Bruce Fontenot filed a rule to make the trial court judgment of August 10, 1984, executory and for penalties and attorney fees. (Plaintiff brought the rule against Sunland Construction Co., Inc. only.) The trial court heard the rule and adopted the contentions of Sunland.
The original judgment quoted in part above provided that plaintiff be paid $183 per week commencing October 28, 1981, and to continue during the period of his disability together with other benefits specified. Mr. Fontenot’s injury, the injury which gives rise to his claim, occurred on October 28, 1981. Fontenot v. Sunland Const., supra, at page 950. At the hearing on the rule which is the subject of the present controversy the parties stipulated that Fontenot was born on September 10, 1916. Consequently, Fontenot was over sixty-five years of age when he was injured.
*609 POSITION OF THE PARTIES
In his rule, Bruce Fontenot alleges that the judgment of August 10, 1984, was in arrears in the amount of $71,333.42 through May 4, 1989. Fontenot also urges that the reduction for “Social Security Benefits” provision does not apply to persons who receive federal social security benefits on the attainment of the age of sixty-five as distinguished from disability benefits paid under the federal social security benefits program. In the alternative, Fontenot urges that the trial court failed to compute the reduction properly and suggests that the proper method to compute the reduction is illustrated in the case of Lofton v. Louisiana Pacific Corp., 423 So.2d 1255 (La.App. 3d Cir.1982).
Sunland addresses neither of the plaintiffs assignments of error. Sunland simply stands on the judgment of August 10, 1984, as a final judgment which it argues cannot be ignored. Sunland contends (and the trial court evidently agreed) that as of August 1989 it owed plaintiff only $6,483.80. It arrived at this conclusion based on the following facts. After plaintiff’s injury, Sunland and its insurer paid plaintiffs workers’ compensation in the amount of $183 per week for one hundred weeks or a total of $18,300. Fontenot v. Sunland Const., supra, at page 951. With this credit, Sunland computed its obligation to plaintiff as follows:
Benefits 10/28/81 through 8/7/89 — 405 weeks at $183 per week $ 74,115.00
LESS CREDITS PER JUDGMENT:
100 weeks at $183 paid by Sunland.$18,300.00
Social Security benefits through 6/83 .3,673.20
Social Security benefits through 6/84 .7,404.00
Social Security benefits through 6/85 .7,404.00
Social Security benefits through 6/86 .7,404.00
Social Security benefits through 6/87 .7,404.00
Social Security benefits through 6/88 .7,404.00
Social Security benefits through 6/89 .7,404.00
Social Security benefits through 8/89 . 1,234.00
TOTAL CREDITS. $-67.631.20
Benefits due Bruce Fontenot through 8/89. $ 6,483.80
TRIAL COURT ACTION ON THE RULE
The trial court gave judgment in favor of Sunland on October 27, 1989, without giving any written reasons for judgment. That is the judgment which is before us in this appeal by the plaintiff. The judgment was in Sunland’s favor because the trial court adopted Sunland’s contention as to what it owed plaintiff under the original judgment, that is, $6,483.80. Therefore, as a technical matter, the judgment as it reads is a judgment in favor of the plaintiff for arrearages in that amount together with penalties of 12%, judicial interest until paid and $2,500 in attorney fees. Plaintiff appealed this judgment. We reverse and remand.
OPINION
In our opinion, we do not reach the question of proper computation of reductions of workers’ compensation because of payments of disability benefits under the federal social security program. When we considered this case on appeal on the issue of schedule benefits versus benefits for total and permanent disability, the question of reduction of “$617 per month for the period plaintiff has received social security benefits” was not before us. We do not know whether the matter was contested at the trial level or not. Nevertheless, the judgment is ambiguous regarding the reduction.
From what we have before us, it appears that Sunland (and its workers’ compensa *610 tion carrier) was never entitled to a “social security reduction” at all. LSA-R.S. 23:1225 provides for a reduction of workers’ compensation benefits in cases of injury producing total and permanent disability when the individual is otherwise subject to a reduction under 42 U.S.C. § 424a. We explained the interrelation of these two statutes in Lofton v. Louisiana Pacific Corp., supra.
We are of the opinion that the “social security reduction” of workers’ compensation to which an employer may be entitled applies to disability benefits payable under the federal Social Security Act, 42 U.S.C. § 301 et seq., but does not apply to social security benefits payable by reason of attainment of a specified age. Moreover, we are convinced that the entitlement of a person to social security benefits because of disability automatically converts to eligibility for old age benefits at age sixty-five. See 70A Am.Jur.2d under the subject of Social Security and Medicare, § 206. Therefore, inasmuch as the plaintiff was sixty-five years old when his accident occurred and he became disabled, any social security benefits to which he may have been entitled would necessarily have been based on his age rather than his disability.
In the hearing on the rule involved in the present phase of this case, counsel for plaintiff offered to stipulate on the date of birth of Bruce Fontenot, September 10, 1916, and “for the purpose of showing what he is receiving is Social Security Benefits based on his sixty-fifth (65th) birthday.” The stipulation as to age appears to have been accepted, but counsel for defendant insisted that the amount be controlled by the judgment which fixed the amount at $617 per month. Tr. 31. We have examined the record for the first phase of the case and the only references to social security received by plaintiff came in response to a question on cross-examination. Mr. Fontenot testified that he was drawing social security in an amount just over $600. We do not find that any explanation was ever entered into the record concerning the basis for plaintiff’s receipt of social security payments. From the foregoing we are certain that the $617 per month mentioned by the trial judge in his first judgment had reference to social security payments based on attainment of age sixty-five rather than being based on his disability. As we noted above, the social security reduction was not brought up to us in the first appeal. 482 So.2d 949.
The Louisiana statutory authority for reduction of workers’ compensation where the federal social security laws provide for disability payments based on the same disability is LSA-R.S. 23:1225, which was added to the workers’ compensation law in 1978. Acts 1978, No. 750, § 1. The background for this Act is set forth by Malone & Johnson in 13 Louisiana Civil Law Treatise, Workers’ Compensation, § 289 which we quote in part:
“In 1978, the Act was amended to require reduction in the benefits payable under workmen’s compensation when the weekly amount, when combined with disability payments under the federal social security program, would otherwise cause a reduction in payments under social security.74 Coverage for disability under the social security program has been expanded over the years, and some concern has been expressed over the duplication of payments which might occur if payments were forthcoming both under state workmen’s compensation laws and the federal social security program.
“Congress responded in the late 1950’s with a statute reducing federal benefits when state benefits were payable, but this was quickly repealed. Subsequently, in 1965, as a part of major amendments to the Social Security Act, Congress again provided for a reduction in social security disability benefits based upon a rather complicated formula taking into account state workmen’s compensation disability payments.75 The gist of the provision is that the disabled worker should be entitled to a maximum specified percentage of his “average monthly wage” for disability. To the extent that the combined payments under social security and workers’ compensation would exceed that amount, social *611 security payments would be reduced accordingly. The outcome of that, of course, would be to leave the state compensation system and those who pay the premiums for its existence to bear the same load as they would have borne without the law, with the difference up to the specified percentage being made up by social security disability benefits.
“Congress left an escape clause, however, stating that the reduction in social security benefits should not be made if the state compensation law provided for a reduction in state benefits when federal social security benefits were available.76 The effect of such a state provision would, of course, be to keep the federal disability benefits at the level they would have been absent any state disability benefits, and permit the compensation benefits to make up the difference. This should result in a lighter burden for those who support the cost of the state compensation system, but this will be borne as a change against the funds that support the social security system. The covered worker should experience no change in the total amount received from the two systems together.
“Louisiana appears to have chosen this approach through its 1978 amendment of the Act. The statute provides that the reduction in compensation payments shall be made “only to the extent” that the combined payments exceed those which would have been payable under federal law guidelines.” (Footnotes omitted.)
In Lofton v. Louisiana Pacific Corp., supra, we commented on the disability benefit coordination provided in LSA-R.S. 23:1225 as follows:
“In 1978, La.R.S. 23:12251 was added to our workmen’s compensation laws in response to a controversy between the state and federal governments over which entity was to pay disability benefits. Legislative Symposium, 39 La. L.Rev. 237, 244 (1978). Prior thereto, an individual’s Social Security benefits were reduced to the extent of state workmen’s compensation disability benefits provided the claimant had not yet reached the age of 62. 42 U.S.C. § 424(a) (1976). The Louisiana Legislature apparently decided that if any entity was to have decreased liability as a result of benefit coordination, it should be the state or, as the case may be, the state employer or its carrier. Accordingly, R.S. 23:1225 was added. At least ten other states have similar provisions. 4 Larsen, Workmen’s Compensation § 97.35 (1978 & Supp.1982). The Louisiana provision states that there shall be an offset to permanent total compensation for federal disability benefits only to the extent that the combined amount would result in reduction of Old Age, Survivors, and Disability Insurance payments.”
Footnote one referred to above set forth LSA-R.S. 23:1225 as it then read. That section has been expanded and the pertinent part is now embodied in paragraph A of Section 1225 and provides:
§ 1225. Reductions when other benefits payable
A. The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Sub-chapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker’s compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases *612 granted under the federal law after the date of the employee’s injury.
Lest it be lost in the total verbage quoted above, it should be noted that the statute provides for the reduction in instances where the beneficiary of social security benefits is entitled to and receiving them under 42 U.S.C. § 423.
A reading of 42 U.S.C. § 424a mentioned in LSA-R.S. 23:1225 shows clearly that it is applicable only to “any month prior to the month in which an individual attains the age of sixty-five” and the first requirement for applicability is that the “individual is entitled to benefits under section 423 of this title [42 U.S.C.].” Section 423 specifically applies to disability insurance payments under the federal social security law. In pertinent part it reads:
§ 423. Disability insurance benefit payments
(a) Disability insurance benefits
(1) Every individual who—
(A) is insured for disability insurance benefits (as determined under subsection (c)(1) of this section),
(B) has not attained the retirement age (as defined in section 416(1) of this title),
(C) has filed application for disability insurance benefits, and
(D) is under a disability (as defined in subsection (d) of this section)
shall be entitled to a disability insurance benefit (i) for each month beginning with the first month after his waiting period (as defined in subsection (c)(2) of this section) in which he becomes so entitled to such insurance benefits, or (ii) for each month beginning with the first month during all of which he is under a disability and in which he becomes so entitled to such insurance benefits, but only if he was entitled to disability insurance benefits which terminated, or had a period of disability (as defined in section 416(i) of this title) which ceased, within the 60-month period preceding the first month in which he is under such disability, and ending with the month preceding whichever of the following months is the earliest: the month in which he dies, the month in which he attains retirement age (as defined in section 416(1) of this title), or, subject to subsection (e) of this section, the termination month.
Section 416(i) mentioned above in section (a)(1)(B) of section 423 reads in pertinent part:
(l) Retirement age
(1) The term “retirement age” means—
(A) with respect to an individual who attains early retirement age (as defined in paragraph (2)) before January 1, 2000, 65 years of age;
Regarding the offset provided in § 424a we quote the following from 70A Am. Jur.2d under the subject of Social Security and Medicare, § 234:
“People who become entitled to Social Security disability benefits may also be entitled to other federal, state, or local government benefits designed to replace lost earning ability. In some cases, the total of all such benefits may exceed the wages the worker actually earned before he became disabled. In order to avoid duplicative governmental benefit payments, disability insurance benefits to which an individual under age 65 is entitled must be reduced to offset other public disability benefits to which that individual becomes entitled. The offset is specifically limited to governmental disability plans which are workers’ compensation or are considered “megacap” benefit plans; it does not extend to amounts received under private disability insurance plans or to personal injury recoveries, and this limitation has been upheld as constitutional. It is the receipt of workers’ compensation benefits or mega-cap benefits during the time that an individual is also entitled to Social Security disability benefits that triggers the offset, regardless of the fact that the respective benefits are founded upon different injuries or ailments.” (Footnotes omitted.)
From the sources we have examined and referred to above it is clear no reduction of workers’ compensation should be *613 made for social security benefits paid on the basis for attainment of age as distinguished from social security benefits based on disability. Philosophically, this is just. On the face of the state and federal statutes providing for reduction, their purpose is to avoid provision of compensation from both state and federal sources for the same disability. Social security benefits based on age do not play any part in the benefit coordination between the state and the federal social security system. Disability is not a factor in qualification for social security benefits on account of age. Prior to age seventy, the income or means of the recipient are not much of a factor, and after age seventy is to all intents and purposes not considered. Thus, it would be out of harmony with the social security scheme to allow an offset or reduction of workers’ compensation based on receipt of social security benefits based on old age.
Our study of the record pertaining to the first phase of this case leads us to believe that the trial court’s provision in its judgment granting reduction “for the period plaintiff has received Social Security Benefits” was perhaps inadvertent. In any event it was error. The only reference at all in the evidence relating to social security contained in the record for the initial phase of the case was plaintiff’s testimony that he did receive social security. No evidence developed the basis on which the plaintiff was receiving social security benefits.
DISPOSITION
Having arrived at our conclusion, the next question to consider is what relief should be given. What disposition should we make of the matter? The defendant has suggested it has a right to stand on the judgment providing for the credit of $617 per month. However, as this is a workers’ compensation matter, we are not bound by rules applicable to other types of proceedings. In Lofton v. Louisiana Pacific Corp., supra, we observed:
“The case at bar involves workmen’s compensation which by its very nature is not a final judgment, as thought of in the ordinary sense, but subject to modification, LSA-R.S. 23:1331, and to which proceedings courts are not bound by technical rules of evidence or procedure. LSA-R.S. 23:1317.”
As we view the circumstances, the solution is not complicated. Although it was error for the trial judge to provide for the reduction in question, we may construe that provision as having been meant to apply to social security benefits plaintiff may have received based on disability. As the plaintiff obviously received no social security benefits based on disability, there have been no benefits which may support a reduction under LSA-R.S. 23:1225. Thus, we arrive at the conclusion that plaintiff is entitled to the compensation due him without any reduction such as defendant claims. It is appropriate at this point that we remand the case to the trial court in order that it may reconsider its judgment of October 27, 1989, in light of and in conformity with the views we have expressed in this opinion.
In the interest of justice, on remand we reserve to defendant the right to prove, if it can, that any social security benefits involved in this case were paid to plaintiff on the basis of disability rather than age. For this reason, and the fact that we entertain some doubt that we have all the facts and data necessary for us to make a disposition ourselves under Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), we think that a remand is in order. The trial judge, or his successor in office, is directed to reopen the rule for the reconsideration to be made, and plaintiff and defendant should be permitted to present such evidence as may be pertinent to the disposition of the rule. In plaintiffs’ motion for the rule to make the October 27, 1989, judgment executory he also asked for penalties and attorney fees. Considering the posture of the case, we will defer to the trial court to consider whether penalties and attorney fees are called for, and if so, to set the amount of the fee.
DECREE
For the reasons assigned, the judgment of the trial court of October 27, 1989, is *614 reversed and set aside. The case is remanded to the trial court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.

. Although the caption of this case indicates that there is more than one defendant, the present proceeding was brought against Sunland Construction Co., Inc. alone and the judgment in this phase of the case is against Sunland alone.