634 So.2d 1365 (1994)
TOWN OF BERWICK, Plaintiff-Appellee,
v.
Elmo JUSTILIAN Defendant-Appellant.
No. 93-854.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1366 Christopher Richard Philipp, Marjorie Briley Breaux, Lafayette, for Town of Berwick.
Robert Dean Hoover, Anthony Marlyn Butler, Baton Rouge, for Elmo Justilian.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
LABORDE, Judge.
The sole issue before us in this workers compensation set-off matter is whether LSA-R.S. 23:1225(C)(1)(b) permits an employer an off-set for old age benefits received by a claimant when the claimant received those benefits before becoming employed by the employer, and the employer did not contribute anything to the employee's Social Security old age account. The hearing officer decided the matter in the affirmative, and our reading of the plain language of the statute, particularly amendments effective since its original enactment, compels us to affirm.
The essential facts are not disputed. Claimant Elmo Justilian was retired and receiving old age Social Security benefits of $830.00 per month when the City of Berwick employed him October 2, 1989, apparently to replace a gas department employee who was out due to an extended illness. The old age benefits he was receiving had been equally funded by Mr. Justilian's own contributions and those of his previous employers; the City of Berwick had made no old-age contributions. The sixty-five year old claimant had been earning $240.00 per week when he was injured in the course and scope of his employment on December 4, 1989.
This appeal arises from the hearing officer's finding that the City of Berwick could reduce claimant's workers compensation benefits due to his receipt of Social Security old-age benefits. Battle is waged on grounds of LSA-R.S. 23:1225(C)(1)(b), which permits an employer to offset against its workers compensation obligations any "Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee."
Initially, Mr. Justilian contended that such an off-set by his employer required a finding that he had received each of the benefits enumerated under LSA-R.S. 23:1225(C)(1), but that was before we reiterated our rejection of that theory in Vallery v. State of Louisiana, 605 So.2d 1380 (La.App. 3d Cir.), writ denied, 609 So.2d 225 (La.1992) (provisions of LSA-R.S. 23:1225(C)(1), Acts 1989, No. 454, effective January 1, 1990, disjunctive; reflective of original intent of statute, could be applied retroactively). Now he maintains that this provision does not permit his employer an offset against his old-age benefits because those benefits had accrued before his injury and because the City of Berwick did not contribute to those old-age benefits.
*1367 Ordinarily, where the employer claims a reduction under LSA-R.S. 23:1225(C)(1), the employer has the burden of proving the amount of that reduction. Vallery, supra, at 1383; Holmes v. International Paper Co., 559 So.2d 970 (La.App. 2d Cir.1990). In this case, however, the parties stipulated that Mr. Justilian funded one-half of the old-age benefits he received prior to his injury and that the City of Berwick made no old-age contributions. As a consequence, this case calls for straight statutory interpretation.
The governing law in a compensation action is that which was in effect at the time of the alleged injury. Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360 (La.1992). Before LSA-R.S. 23:1225(C)(1)(b) (concerning set-off for Social Security old-age benefits), supra, was added by a 1983 Act, the "social security reduction" of workers compensation to which an employer might be entitled was applicable only to certain social security disability benefits, not to social security benefits payable by reason of attainment of a specified age. See, e.g., Fontenot v. Sunland Const. Co., Inc., 585 So.2d 607 (La.App. 3d Cir.), writ denied, 589 So.2d 494 (La.1991) (1981 accident). As a consequence, had Mr. Justilian been injured prior to the effective date of the 1983 legislation, he unquestionably would be entitled to the relief he presently seeks. However, with Acts 1983, 1st Ex.Sess., No. 1, Section 1, effective July 1, 1983, the Legislature took affirmative steps to eliminate the distinction between old-age and disability benefits when it added subsection C, including 23:1225(C)(1)(b), to provide a reduction for any social security old-age benefits received under Title II of the Social Security Act to the extent not funded by the employee. The law in force at the time of Mr. Justilian's 1989 accident read as follows:
C.(1) If an employee receives remuneration from: (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury.
(2) Notwithstanding the provisions of Paragraph (1) of this Subsection, benefits payable for injury to an employee under this Chapter shall not be reduced by the receipt of benefits under this Chapter or any other laws for injury or death sustained by another person.
Added by Acts 1978, No. 750, Section 1; amended by Acts 1983, 1st Ex.Sess., No. 1, Section 1, eff. July 1, 1983.[1]
When the wording of a Section of the Revised Statutes is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4. The clear and unambiguous language of the statute requires us to reject Mr. Justilian's interpretation of the statute.
The initial (that is, before LSA-R.S. 23:1225(C)(1), supra, was added by the 1983 amendments) purpose of LSA-R.S. 23:1225 was to allocate to workers compensation carriers rather than the Federal government any decreased liability that might result from enhanced benefit coordination, the notion being that a party should not be provided double compensation for the same disability. The provision was not designed to effectuate a reduction below what the prior federal offset provisions provided the worker for his or her disability. Lofton v. Louisiana Pacific Corp., 423 So.2d 1255, 1257 (La.App. 3d Cir.1982).
The Legislature's 1983 grafting of the social security old-age off-set onto the skeleton of LSA-R.S. 23:1225 transformed that provision *1368 into something far different, a structure of workers compensation benefits whose primary goal now seems to be ascertainment of minimum financial life support, more or less regardless of source, provided that other source is expressly enumerated in the set-off provision.
Subsequent to LSA-R.S. 23:1225's original enactment, the Legislature apparently has come to view workers compensation and social security benefits as but different units in an overall scheme oriented toward one goal, protection against wage loss. See generally, Larson, 4 The Law of Workmen's Compensation (Matthew Bender 1990), Sections 96.10-96.80; 97.10-97.36, which propounds this theory and offers a comparative view of states' workers compensation set-off legislation. Viewed from this perspective, the 1983 amendments symbolize the Legislature's intent to reduce the overall compensation offered to certain classes of injured and retired claimants perceived by it to be excessive, duplicative, or unaffordable. At the same time, the amendments were not so broad as to affect all workers; prior levels of relief awarded other retired workers, including those fortunate enough to receive private old-age benefits, were retained. Introduction of LSA-R.S. 23:1225(C)(1)(b) essentially completed the change in philosophical thrust of the laws of workers compensation in Louisiana which has accelerated and persists to the present day.[2]
LSA-R.S. 23:1225(C)(1), apart from articulating the classes so affected, sets forth the methods for calculating the amount to be set-off in certain specific cases. The provision effectively establishes a gradient whose effect is to adjust an injured worker's net benefits on the basis of what other benefits, if any, he receives and on the basis of who paid for the benefits. Employers may set-off workers compensation benefits owed to the extent the injured worker receives disability benefits, but only to the extentthat is, "in the proportion"those benefits had been funded by employers. LSA-R.S. 23:1225(C)(1)(c); Matthews, supra. Employers seeking an offset against Social Security old-age benefits too may reduce their workers compensation benefits, but only to the extent the old-age benefits were not funded by the employee. Importantly, only those old-age or retirement benefits specifically listed in LSA-R.S. 23:1225(C)(1) may be offset against, see, e.g., Cousins v. City of New Orleans, 584 So.2d 1145, 1146 (La.1991) (city retirement); Vallery, supra (state retirement); and by the provision's express terms, a worker cannot be deprived of his or her due for benefits payable from sums set aside by the worker for his disability plans or Social Security old-age benefits.
Without expressing our personal views as to the wisdom of the actions of the Legislature or concealing any great sympathy we *1369 may feel personally for Mr. Justilian, absent some expression by a superior authority on constitutional[3] or other grounds, we conclude that the hearing officer fairly and properly interpreted LSA-R.S. 23:1225(C)(1). In light of the great legislative changes of heart that have transpired in recent years, it is of no moment that the City of Berwick did not contribute to the employee's social security old-age account. As a matter of law, our gaze must remain fixed on how much workers compensation is due Mr. Justilian under LSA-R.S. 23:1225(C)(1)(b), which was effective prior to his 1989 accident, not on how much social security the gentleman has earned and is independently entitled to. The Legislature clearly intended that workers compensation benefits be reduced by that portion of old-age benefits workers compensation claimants receive for which they individually did not contribute.
Although claimant is not entitled to complete duplicative recovery in the face of a law so clearly written, it is nonetheless important to note that an employer is not permitted to offset against its workers compensation obligations the entire sum received by its employee in old-age benefits. An employee entitled to Social Security "old-age" benefits who later becomes disabled on the job maintains the right to receive that percentage of his old-age benefits for which he paid, over and above the workers compensation rate of two-thirds of his usual wage. No set-off is permitted for that portion.
*1370 As we interpret them, these were the legal conclusions of the hearing officer, and we affirm same.

Decree
The decision of the hearing officer is affirmed. Costs assessed to defendant-appellant.
AFFIRMED.
NOTES
[1] Although subsequently amended, the provision as set forth above has been left largely unchanged since its introduction in 1983.
[2] Compare Fontenot, at 612-613:

From the sources we have examined and referred to above it is clear no reduction of workers' compensation should be made for social security benefits paid on the basis for attainment of age as distinguished from social security benefits based on disability. Philosophically, this is just. On the face of the state and federal statutes providing for reduction, their purpose is to avoid provision of compensation from both state and federal sources for the same disability. Social security benefits based on age do not play any part in the benefit coordination between the state and the federal social security system. Disability is not a factor in qualification for social security benefits on account of age. Prior to age seventy, the income or means of the recipient are not much of a factor, and after age seventy is to all intents and purposes not considered. Thus, it would be out of harmony with the social security scheme to allow an offset or reduction of workers' compensation based on receipt of social security benefits based on old age.
and Lofton, 423 So.2d, at 1259:
As aforementioned, the intent of R.S. 23:1225 was to give the compensation carrier, rather than the federal government, the benefit of the ceiling placed on both programs by the coordination of benefits. The statute did not effect a reduction below that which the federal offset provisions provided for.
The tidal change marked by passage of LSA-R.S. 23:1225(C)(1)(b) persists to this day. Compare, for example, LSA-R.S. 23:1221 as it read through Acts 1983, 1st Ex.Sess., No. 1, Section 1, eff. July 1, 1983 (more stringent clear and convincing evidence burden imposed on workers seeking permanent total disability), with the later version, effective July 1, 1990 (Act No. 454, Section 6, of 1989, inter alia, increased the burden of proof of workers seeking temporary total disability and legislatively discarded the odd-lot doctrine and doctrine of working in pain).
[3] Statutes are presumed to be constitutional. Jones v. Board of Ethics for Elected Off., 605 So.2d 1064 (La.1992).

To be unconstitutional, a classification must be manifestly arbitrary and unreasonable, and not possibly so. Gulf States Utilities Co. v. Traigle, 310 So.2d 78 (La., 1975). A discriminatory purpose is not presumed. Parties attacking a statute must bear the burden of proving clear and intentional discrimination. Louisiana & Arkansas Railway Company v. Goslin, 300 So.2d 483 (La., 1974).
R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600, 603 (La.1983).
In Guillory v. Stone & Webster Engineering, 545 So.2d 605, 609 (La.App. 3d Cir.1989), it was claimed that a prior version of the statute was unconstitutional because it discriminated against permanently totally disabled workers. The statute withstood constitutional attack on equal protection grounds: because temporarily totally or permanently totally disabled workers received identical sums for their disability, the provision contained no more than a semantic "discrimination without teeth."
The LSA-R.S. 23:1225(C) reduction of senior employees' workers compensation disability benefits by the amount of social security old-age benefits received is a closer call, as the benefits appear wholly unrelated. The question is all the more complicated by the fact that the provision by its own terms singles out only the oldest members of the workforce.
Article 1, Section 3 of the Louisiana Constitution provides:
§ 3. Right to Individual Dignity
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Claimant has not questioned the constitutionality of the statute, either on its face or in its application, and the record before us does not afford an opportunity for more closely scrutinizing the provision's constitutionality. Cf. Gulf States Theatres of La., Inc. v. Richardson, 287 So.2d 480, 487 (La.1973) ("[A] statute which is unconstitutional on its face cannot be constitutionally enforced."). Having failed to allege let alone prove the statute's unconstitutionality by clear and convincing evidence, Matter of American Waste & Poll. Control, 588 So.2d 367 (La. 1991), we decline to reach the question. Instead, we choose to presume, Jones, supra, that the reduction called for in LSA-R.S. 23:1225(C)(1)(b) was designed to effectuate legitimate ends, to wit, reducing employers' costs of workers compensation, spurring the state's economy and, presumably, encouraging the hiring of senior citizens.
Although significant age discrimination questions arise from the apparent conflict between the constitution's and statute's terms, we defer to the Act's presumed constitutionality. A contrary conclusion could potentially render unemployable much of that very class Mr. Justilian represents, the retiree who wishes to return to work, as a result of higher workers compensation risks, real or perceived, that might be viewed by employers to accompany the employment of a senior. On the limited record before us, we choose to presume that the legislature sought to remove these cost disadvantages to employing our state's seniors. We note that our conclusion is not easy, as LSA-R.S. 23:1225(C), as amended by Acts 1991, No. 469, Section 1, now permits of seniors possessing the requisite bargaining power the ability to vary the terms of the legislative presumption through the use of employment agreements, but did not at the time Mr. Justilian agreed to come out of retirement to work for the City of Berwick.