660 So.2d 841 (1995)
Betty GARRETT
v.
SEVENTH WARD GENERAL HOSPITAL.
No. 95-C-0017.
Supreme Court of Louisiana.
September 22, 1995.
Rehearing Denied November 17, 1995.
*842 William R. Mustian, III, for applicant.
Alton B. Lewis, for respondent.
LEMMON, Justice[*].
This case involves the interpretation of La.Rev.Stat. 23:1225 C(1)(c), which allows an employer a reduction in his obligation to pay workers compensation benefits when the employee collecting workers' compensation benefits from the employer is contemporaneously receiving "benefits under disability benefit plans...." The issue before the court is whether the employer is entitled to the reduction when the employee is receiving both workers' compensation benefits and Social Security disability benefits.

Facts
In January and April of 1988, plaintiff sustained injuries on the job, and the employer began paying workers' compensation benefits. In April of 1989, plaintiff also began receiving Social Security disability benefits.
In November of 1990, plaintiff filed the initial petition in the present action seeking to recover certain unpaid medical expenses. In answering the suit, the employer asserted its right to a reduction of benefits under La.Rev.Stat. 23:1225, but did not pursue the matter at the time. A dispute then developed over whether plaintiff was disabled. Because of that dispute and because the amount of the Social Security disability benefits plaintiff was receiving exceeded her worker's compensation benefits,[1] the employer discontinued paying compensation benefits.
The hearing official found that plaintiff was temporarily totally disabled, and that part of the judgment is not in dispute at this time. The hearing officer also rejected the employer's request for reduction in benefits, reasoning:
The statute is clear.[2] The defendant may only reduce benefits for injuries producing permanent, total disability. There was never any evidence to indicate the claimant's condition was permanent and permanent disability benefits were never paid by the defendant. (emphasis in original).
*843 The court of appeal, in an unpublished opinion, reversed the judgment in part and awarded the reduction. The intermediate court reasoned that Section 1225 does not define the term "disability benefit plan," that Section 1225 C(1)(c) provides a setoff for disability benefit plans generally, and that the broad term reasonably encompasses Social Security disability benefits. The court noted that "[t]his conclusion is consistent with the intent of the statute which, when read as a whole, is to insure that workers do not profit through their disability."
This court granted certiorari, 95-0017 (La. 3/10/95), 650 So.2d 1167, to address the narrow statutory construction issue of whether the Legislature's use in Section 1225 C(1)(c) of the term "benefits under disability benefit plans," the receipt of which triggers an employer's right to a reduction of its workers' compensation obligation, contemplated Social Security disability benefits.

History of Wage-Loss Benefit Coordination Laws
Workers' compensation is part of an employer-based system of wage-loss protection. The overall system of benefits by which an employer provides its employees with protection against loss of wages also includes unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance. 4 Arthur Larson, Worker's Compensation § 97.10 (1995). Despite the general recognition that these benefit devices are part of an overall system, "the jerry-built character of American social legislation has resulted at many points in failure to anticipate and provide for appropriate coordination." Id. at § 97.20. As a result, duplication of benefits was quite common and led to legislative efforts to coordinate benefits.
Wage-loss benefit coordination laws are designed to achieve a dual purpose: (1) to assure, when an employee suffers a wage loss because of disability, unemployment, advanced age or death, that a certain minimum portion of the employee's actual wages is continued or, in the case of death, that the employee's dependents receive some degree of recovery of lost support; and (2) to preclude an employee from contemporaneously collecting duplicative wage-loss benefits under different parts of the overall system of employer-based protection against loss of wages. Benefit coordination laws are based on the premise that an employee experiencing a period of wage loss should not be permitted to receive duplicative benefits from different parts of the overall system provided by the employer and thereby recover more than the amount of his or her actual wages. The theory is that an employee experiencing only one wage loss should be entitled to receive only one wage-loss benefit from the employer. Benefit coordination laws thus avoid duplicative benefits collected from the employer and prevent social legislation from becoming a "grab bag" of assorted, unrelated wage-loss benefits. 4 Arthur Larson, Worker's Compensation § 97.10 (1995).
As early as 1956, Congress addressed the obvious overlap between state workers' compensation benefits and federal Social Security disability benefits. Concerned that such overlapping benefits would lead to an erosion of state workers' compensation programs and would reduce employees' incentive to return to work and thus impede rehabilitative efforts, Congress included in the initial Social Security disability benefits enactment a provision calling for a full offset of Social Security disability benefits if the employee was contemporaneously receiving workers' compensation benefits. Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). While that offset was quickly repealed in 1958, it was re-enacted in 1965 as part of a major amendment to the Social Security Act.
Simply stated, the present federal statute requires that the amount of Social Security disability payments be reduced when the combined amount of such disability payments and the employee's workers' compensation benefits exceeds eighty percent of the employee's "average current earnings."[3] 42 U.S.C. § 424a(a)(1991). By adopting an offset *844 in the form of an eighty percent federal ceiling, Congress "reduced the duplication inherent in the programs and at the same time allowed a supplement to workmen's compensation where the state payments were inadequate." Richardson v. Belcher, 404 U.S. at 83, 92 S.Ct. at 258.
The federal offset statute was modified for a period of time by a provision in Section 424a(d) that the federal offset did not apply if the state workers' compensation law itself provided for an offset of Social Security disability benefits against state workers' compensation benefits in the event of an overlap. By this "reverse offset" provision, Congress allowed the states to provide a benefit for local employers by enacting such a provision, with no reduction in the overall benefits received by employees.[4] However, as part of a cost-cutting reform measure, Congress later imposed a cutoff date of February 18, 1981 for such state legislation. The effect of the cutoff date was to "grandfather in" existing state offset provisions enacted during the window period and to close the door to any subsequent state offset enactments. After the cutoff date, any legislation that added to or altered the scope of an existing state offset provision would not be recognized. 2 Social Security Law & Practice § 26:69 (M. Rosenhouse ed. 1987).

Louisiana's Wage-Loss Benefit Coordination Law
The wage-loss benefit coordination law in effect at the time of plaintiff's accident[5] was La.Rev.Stat. 23:1225, which then provided in pertinent part:
A. The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker's compensation benefits would otherwise cause or result in a reduction of benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury.
B. No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits, except as provided for in R.S. 23:1601(7)(b).

*845 C.(1) If an employee receives remuneration from: (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury. (emphasis added).[6]

History of Louisiana's Wage-Loss Benefit Coordination Laws
In 1978, apparently in response to the federal law which then allowed states to enact a reverse offset of Social Security disability benefits against workers' compensation benefits, the Louisiana Legislature enacted a reverse offset provision that is presently set forth in La.Rev.Stat. 23:1225 A.[7] However, the Legislature limited the 1978 reverse offset provision to permanent total workers' compensation benefits. Given that plaintiff presently is neither entitled to nor receiving permanent total workers' compensation benefits, Section 1225 A's reverse offset is inapplicable, as the trial court correctly concluded.
In 1983 the Legislature amended La.Rev. Stat. 23:1225 to add other wage-loss benefit coordination provisions. However, because of the 1981 federal cutoff date, the 1983 amendments could not broaden the reverse offset provision originally enacted in 1978 and contained in the present Section 1225 A. Therefore, Section 1225 C(1), unlike Section 1225 A, is not a reverse offset provision. Since Section 1225 C(1) was enacted too late to reap the benefits of the reverse offset from Social Security previously available, its apparent purpose was to incorporate other types of public and private benefits that might be coordinated with workers' compensation benefits.

Interpretation of La.Rev.Stat. 23:1225 C(1)(c)
The wage-loss coordination provision of Section 1225 C(1) was "designed to add all the benefits not funded by the employee; and, if the combined benefits exceeded 66 2/3 percent of the employee's average weekly wage, the employer would be given an offset of the excess against the obligation to pay workers' compensation benefits." Dennis P. Juge, Louisiana Workers' Compensation § 12:5 (1995). Section 1225 C(1) thus provides Louisiana employers with an offset against their worker's compensation obligation of benefits provided by different employer-based sources and establishes a sort of state ceiling of benefits to which an employee is entitled. H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La.L.Rev. 669, 705 (1984); Wex S. Malone & H. Alston Johnson III, 13 Louisiana Civil Law Treatise-Workers Compensation Law and Practice § 289 (3d ed. 1994).
Plaintiff contends that the court of appeal erred in construing Section 1225 C(1)(c) broadly to include Social Security disability benefits within the generic term "disability benefit plans." According to plaintiff, this *846 broad construction violated the mandate in Cousins v. City of New Orleans, 608 So.2d 978 (La.1992), that Section 1225 C is a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. We disagree.
The rule of strict construction might be applicable if broad construction infringed upon the injured worker's right to workers' compensation benefits. However, broad construction in this case merely prevents the claimant from collecting duplicate wage-loss benefits provided by the employer, which is one of the very purposes of wage-loss benefit coordination laws.
Moreover, the jurisprudential mandate of strict construction is tempered by the statutory mandate that "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. A jurisprudential mandate of strict construction cannot be read as precluding courts in the face of unclear statutory language from considering clear legislative intent. "Strict construction cannot be used to defeat the clear intent of the statute." 3 Sutherland on Statutory Construction § 58.01 (5th ed. 1992). Indeed, the paramount consideration in interpreting a statute is ascertaining the Legislature's intent and the reasons that prompted the Legislature to enact the law. Touchard v. Williams, 617 So.2d 885, 888 (La.1993).
The Legislature easily could have specified its intention to limit the offset provided by Section 1225 C(1)(c) to benefits from private disability benefit plans. Likewise, the Legislature easily could have specified its intention to exclude disability benefits under the Social Security Act from the term "disability benefit plans." Because the Legislature did not do either, we conclude that the Legislature's choice of language is ambiguous.
This ambiguity is further evidenced by Section 1225 C(1)(b), which expressly allows such an offset when the employee is collecting old-age benefits under the Social Security Act, but contains no mention of disability benefits under the Social Security Act, although the Legislature easily could have expressly included these. Nonetheless, Section 1225 C(1)(b)'s express reference to Social Security old-age benefits is not inconsistent with a reading of Section 1225 C(1)(c)'s general reference to "disability benefit plans" as including Social Security disability benefits. A workers' compensation offset for Social Security old-age benefits is rare, given the dissimilarity of these benefits. John D. Copeland, The New Arkansas Workers' Compensation Act: Did the Pendulum Swing Too Far?, 47 Ark.L.Rev. 1, 64 (1994); see also Town of Berwick v. Justilian, 93-854 (La.3/2/94); 634 So.2d 1365 (discussing dissimilarity). In contrast, a workers' compensation offset for Social Security disability benefits is common, given the similarity of these benefits. Arthur Abraham & Irwin Wolkstein, Workmen's Compensation and the Social Security Disability Program: A Contrast, 16 Vand.L.Rev. 1055 (1063).
We conclude that the Legislature, by not using any qualifying language such as "private" and by not specifying any exceptions or exclusions from the term "disability benefit plans," meant to provide an offset for benefits received under any "disability benefit plan," at least to the extent funded by the employer. Disability benefits under the Social Security Act are benefits under a "disability benefit plan." That such disability benefits are referred to interchangeably as "Social Security disability insurance benefits" and that the source of such benefit payments is an insurance fund does not alter the character of such compensation. Indeed, "disability compensation" is defined as "[p]ayments from public or private funds to one during period of disability and incapacity from work; e.g., social security or workers' compensation disability benefits." Black's Law Dictionary 415 (5th ed. 1979). Moreover, many types of private benefit plans are funded by insurance.
Our construction of Section 1225 C(1)(c) as including Social Security disability benefits is bolstered by the clear legislative intent behind the 1983 amendments which engrafted Section 1225 C(1) onto the previous wage-loss benefit coordination provision now contained in Section 1225 A. Those 1983 *847 amendments were part of a substantial revision of the Louisiana Workers' Compensation Act, the overall purpose of which was to reduce the cost of workers' compensation for Louisiana employers. H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La.L.Rev. 669, 705 (1984). Construction of Section 1225 C(1)(c) as excluding Social Security disability benefits would thus be contrary to the overall legislative purpose of the 1983 amendments to reduce employers' compensation liability. Further, such a construction would be contrary to Section 1225 C(1)'s apparent legislative purpose of broadening the scope of benefits which may be used to reduce the employer's workers' compensation obligation. Still further, such a construction would permit the exact duplication of benefits that benefit coordination provisions like Section 1225 are designed to preclude.
Plaintiff argues, and the trial court apparently agreed, that to construe Section 1225 C(1)(c) as including Social Security disability benefits would create a conflict or contradiction between Section 1225 A and Section 1225 C(1). We disagree. Because of the 1981 federal cutoff for reverse offsets, the Legislature could not expand Section 1225 A beyond permanent total benefits. Moreover, these two sections provide different types of offsets and benefit ceilings. Section 1225 A coordinates some Louisiana workers' compensation benefits by means of the federal Social Security offset provisions of 42 U.S.C. § 424a(a) and (d), and imposes the federal ceiling of eighty percent of "average current earnings." Section 1225 C(1) coordinates Louisiana workers' compensation benefits with other employer-based benefits, including Social Security benefits, and imposes a separate state ceiling of sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury. Hence, our construction of Section 1225 C(1)(c) as including Social Security disability benefits does not create a conflict with Section 1225 A.
Plaintiff further argues that there is a conflict in the differing wording of Section 1225 C(1)(b) and Section 1225 C(1)(c) regarding the amount of the credit. Section 1225 C(1)(c) limits the credit for disability benefit plans to benefits "in the proportion funded by an employer." On the other hand, Section 1225 C(1)(b) limits the credit for old-age Social Security benefits to those "not funded by the employee."[8] We find these sections, albeit differently worded, convey the same meaning from two different perspectives: Section 1225 C(1)(b) expresses the limit from the employee's perspective, while Section 1225 C(1)(c) expresses the limit from the employer's perspective.
Finally, plaintiff contends that the Legislature intended a reduction only for disability benefits voluntarily provided by the employer, pointing out that employer contributions to Social Security are mandated by law. Section 1225 C(1) contains no indication of such legislative intent. Indeed, Sections 1225 A, B and C(1)(b) contain benefits mandated by law, and workers' compensation benefits themselves are not voluntary.
We conclude, as did the court of appeal, that plaintiff's employer is entitled under Section 1225 C(1)(c) to an offset of Social Security disability benefits against its workers' compensation obligation.

Amount of Credit
Plaintiff contends that even if the court of appeal correctly concluded that her employer is entitled to a reduction in benefits, the court erred in failing to remand for a determination of the amount of credit, given the lack of evidence in the record. We agree.
Our holding that Section 1225 C(1)(c) is not a reverse offset provision, coupled with our construction of Section 1225 C(1)(c) as including Social Security disability benefits, results in a potential double offset, one state and one federal. The record does not address how *848 the Social Security Administration is currently handling the federal offset,[9] nor does it contain any offset calculations if both offsets apply. Therefore, we find a remand warranted. In any event, any offset due to the employer under La.Rev.Stat. 23:1225 C(1)(c) cannot reduce plaintiff's combined workers' compensation benefits and Social Security benefits below sixty-six and two-thirds percent of her average weekly wage.

Decree
For these reasons, that portion of the judgment of the court of appeal holding that the employer is entitled to a reduction in its workers' compensation obligation pursuant to La.Rev.Stat. 23:1225 C(1)(c) is affirmed. The case is remanded to the district court to fix the amount of reduction due the employer.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
The majority opinion concludes that plaintiff's employer is entitled under La.R.S. 23:1225 C(1)(c) to an offset of Social Security temporary disability benefits against its workers' compensation obligation. I disagree.
Social Security temporary disability payments are not the kind of employer funded or supported disability plan to which reference is made in La.R.S. 23:1225 C(1)(c). First, the language of the statute does not support such a construction. Reading the statute in its entirety, it is evident that when the Legislature referred to benefits available under the federal Social Security program, it did so very specifically, unlike the general and imprecise language of La.R.S. 23:1225 C(1)(c). For example, La.R.S. 23:1225 A speaks of "benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits" and mentions the specific applicable provisions of the United States Code: 42 U.S.C. § 423 and 42 U.S.C. § 424a. Even within the subsection of the statute under consideration in the present case, in La.R.S. 23:1225 C(1)(b), the Legislature clearly and specifically addresses "old-age insurance benefits received under Title II of the Social Security Act". It is therefore illogical to conclude that the Legislature intended the very general phrase "disability benefit plans" to encompass the very specific Social Security temporary disability benefits program.
To me, it is evident that the Legislature only intended this offset to apply to private disability plans funded or supported by an employer, and not benefits available under the federal Social Security program. This interpretation of the statute is supported by H. Alston Johnson, III, author of La. Civil Law Treatise, Vol. 13, Workers' Compensation Law and Practice, § 289 (3d ed. 1994), who explains that the offset provision of La. R.S. 23:1225 C(1)(c) only applies to private disability plans. Johnson explains the effect of Section 1225's amendments, limiting offsets to remuneration from worker's compensation, old-age insurance benefits under social security to the extent not funded by the employee, disability benefits under a private plan, in the proportion funded by the employer, and any other workers' compensation benefits. See also H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendment to the Workers' Compensation Statute, 44 La.L.Rev. 669, 705 (1984). This interpretation comports with our instruction in Cousins v. City of New Orleans, 608 So.2d 978, 981 (La.1992) that inasmuch as the credit under La.R.S. 23:1225 C constitutes a constriction on an injured employee's right to worker's compensation benefits, it must be strictly construed.
Accordingly, I respectfully dissent.
NOTES
[*] Judge Morris A. Lottinger, Jr., Court of Appeal, First Circuit, sitting by assignment in place of Justice James L. Dennis.

Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Plaintiff became eligible for Social Security disability benefits of $704.10 in April 1989. Such benefits were gradually increased to $805.70, effective December 1991. Her workers' compensation benefits, converted to a monthly figure, were $622.40.
[2] The hearing officer clearly was referring to La.Rev.Stat. 23:125 A, which allows a reduction only for permanent total disability benefits. The hearing officer did not discuss a reduction under La.Rev.Stat. 23:1225 C.
[3] The federal statute sets up a complicated formula for calculating "average current earnings." Suffice it to say, the record in this case reflects that eighty percent of plaintiff's "average current earnings" was $710.40 per month.
[4] A "reverse offset" is a state enactment that requires the removal of the offset taken or to be taken by the federal government. Dennis P. Juge, Louisiana Workers' Compensation § 12:4 (1995). A reverse offset provision "allows the state's reduction to take precedence, and precludes [the federal government] from implementing a second, double, offset." Sciarotta v. Bowen, 837 F.2d 135, 137 (3d Cir.1988). A "reverse offset" provision "effectively shift[s] costs back to the federal government by reducing state workers' compensation benefits to account for federal [S]ocial [S]ecurity benefits." Harris v. State, Dept. of Labor & Industries, 120 Wash.2d 461, 467, 843 P.2d 1056, 1059 (1993) (citing 2 Social Security Law & Practice § 26:66 (M. Rosenhouse ed. 1987)). Therefore, these provisions permit states to recoup for themselves the savings created by the offset and reduce the burden on the state compensation system.

Under reverse offset provisions, "[t]he covered worker should experience no change in the total amount received from the two systems together." Wex S. Malone & H. Alston Johnson III, 13 Louisiana Civil Law TreatiseWorkers' Compensation Law and Practice § 289 (3d ed. 1994). Stated otherwise, under the reverse offset, the employee receives the same amount of benefits, but from different sources.
[5] In a worker's compensation case, the applicable law is that which was in effect at the time of the compensable injury. Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 360 (La.1992).
[6] Section 1225 C has been amended twice, first to change the conjunction between (c) and (d) from "and" to "or," and then to eliminate the conjunction entirely. These amendments were merely clarifications of the original legislative intent. Matthews v. City of Alexandria, 619 So.2d 57, 60 n. 7 (La.1993). Nonetheless, the Legislature arguably has yet to express its true intent clearly. The Legislature apparently intended that when an employee receives remuneration both from Louisiana worker's compensation benefits under (a) and from any one of the other three listed sources of remuneration under (b), (c) or (d), then the employer is entitled to an offset of the benefits received from the other sources, limiting the employee to a total of sixty-six and two-thirds percent of his or her wages.
[7] The 1983 amendments to the Workers' Compensation law, discussed in detail elsewhere, redesignated the contents of the original 1978 reverse offset enactment as La.Rev.Stat. 23:1225 A. Those amendments also added to Section 1225 A a provision excluding cost-of-living increases from the offset.
[8] The latter language has been construed as permitting an employer to take a fifty percent credit despite the fact that the employee and his predecessor employer made all the contributions. Duke v. Rapides Senior Citizens Center, 94-621 (La.App. 3d Cir. 12/7/94); 647 So.2d 648; cert. denied, 95-0055 (La. 3/17/95), 651 So.2d 268; City of Pineville v. Coleman, 93-944 (La.App. 3d Cir. 4/6/94); 635 So.2d 583; Town of Berwick v. Justilian, 93-854 (La.App. 3d Cir. 3/2/94); 634 So.2d 1365, 1368.
[9] Section 1225 C(1)(c) applies only when the employee "receives remuneration" from both workers' compensation benefits and "disability benefit plans," and thus requires evidence of the precise amount plaintiff is receiving in Social Security disability benefits. Although plaintiff argues that the federal offset was taken for the workers' compensation benefits she received against her Social Security benefits, the record does not contain any proof of this.