I2FOGG, Judge.
By this appeal, a workers’ compensation claimant contests the hearing officer’s computation of the reverse offset provided for by LSA-R.S. 23:1225. For the following reasons, we affirm.
On September 14, 1989, Richmond Boyd, Jr. was injured while in the course and scope *1339 of his employment with Rouse’s Supermarket. At the time of the accident, Boyd’s average weekly wage was $300.00. On the date of the accident, Rouse’s Supermarket began paying bi-weekly workers’ compensation benefits at the weekly rate of $240.08.
After the accident, Boyd applied for and was awarded disability benefits pursuant to the Federal Old Age, Survivor’s and Disability Insurance Benefits, 42 U.S.C. Chapter 7, Sub-chapter II for himself and on behalf of his four children. His first month of entitlement to Social Security disability benefits was March, 1990.
On December 9, 1993, Rouse’s Supermarket and the Fidelity and Casualty Company of New York made judicial demand for the Social Security disability offset in their favor as provided for by LSA-R.S. 23:1225. This matter came for hearing before the Office of Workers’ Compensation on February 3,1994. The parties stipulated to the permanent total disability status of Boyd. On June 8, 1994, the hearing officer rendered judgment in favor of the defendants finding that Rouse’s Supermarket is entitled to a reverse offset for the claimant’s receipt of Social Security benefits. It was ordered that the correct initial total family benefit entitlement is $1,396.10; that eighty percent of the average current earnings of the family is $1,129.60; that the monthly workers’ compensation benefits is $1,040.30; and that calculations should be computed by using Louisiana Department of Labor Form LDOL-WC-1004.
Boyd appealed that judgment. On May 5, 1995, this court reversed the judgment of the Office of Workers’ Compensation and ^remanded the case “for the introduction of additional evidence and a determination of the amount of the offset to which Rouse’s is entitled under LSA-R.S. 23:1225C(1).” We stated further that “[t]he hearing officer should make a determination of what portion of the plaintiffs disability payments are attributable to employee funding and apply the credit accordingly.” Boyd v. Rouse’s Supermarket, 94-1930, p. 3 (La. 1 Cir. 5/5/95); 655 So.2d 463, 465.
Subsequently, the Supreme Court, in the case of Garrett v. Seventh Ward General Hospital, 95-0017 (La.9/22/95); 660 So.2d 841, provided a detailed history of wage-loss benefit coordination laws. Specifically, the Court discussed the overlap between state workers’ compensation benefits and federal Social Security disability benefits, as follows:
Simply stated, the present federal statute requires that the amount of Social Security disability payments be reduced when the combined amount of such disability payments and the employee’s workers’ compensation benefits exceeds eighty percent of the employee’s “average current earnings.” 42 U.S.C. See. 424a(a) (1991). By adopting an offset in the form of an eighty percent federal ceiling, Congress “reduced the duplication inherent in the programs and at the same time allowed a supplement to workmen’s compensation where the state payments were inadequate.” Richardson v. Belcher, 404 U.S. [78] at 83, 92 S.Ct. [254] at 258 [30 L.Ed.2d 231 (1971)].
The federal offset statute was modified for a period of time by a provision in Section 424a(d) that the federal offset did not apply if the state workers’ compensation law itself provided for an offset of Social Security disability benefits against state workers’ compensation benefits in the- event of an overlap. By this “reverse offset” provision, Congress allowed the states to provide a benefit for local employers by enacting such a provision, with no reduction in the overall benefits received by employees. However, as part of a cost-cutting reform measure, Congress later imposed a cutoff date of February 18, 1981 for such state legislation. The effect of the cutoff date was to “grandfather in” existing state offset provisions enacted during the window period and to close the door to any subsequent state offset enactments. After the cutoff date, any legislation that added to or altered the scope of an existing state offset provision would not be recognized. 2 Social Security Law & Practice Sec. 26:69 (M. Rosenhouse ed.1987).
Garrett, 95-0017, p. 4-5; 660 So.2d at 843-844. (Footnote omitted.)
LFurthermore, the supreme court concluded that, in 1978 in response to the federal law which then allowed states to enact a reverse offset of Social Security disability benefits against workers’ compensation benefits, the *1340 Louisiana Legislature enacted a reverse offset provision that is set forth in LSA-R.S. 28:1225 A[1]; however, the legislature limited this reverse offset provision to permanent total workers’ compensation benefits. Garrett, 95-0017, p. 7; 660 So.2d at 845. The court further found that Section 1225 C(l)[2], unlike Section 1225 A, is not a 15reverse offset provision as it was enacted in 1983, after the 1981 cutoff date and, therefore, was enacted too late to be a reverse offset. Garrett, 95-0017, p. 7; 660 So.2d at 845.
On remand, the hearing officer rendered judgment finding that Boyd is entitled to be paid benefits under LSA-R.S. 23:1225 A; that Rouse’s Supermarket is entitled to a reverse offset for the claimant’s receipt of Social Security benefits, in the amount of $1,040.30 in accordance with LSA-R.S. 23:1225 A; that all employers contributed fifty percent jointly and the employee contributed fifty percent to the FICA tax paid in this case; and that Rouse’s Supermarket will be given a fifty percent credit only for their share of the employers’ contribution during the period of the claimant’s employment with them and only those amounts which were paid by Rouse’s in accordance with LSA-R.S. 23:1225 C, if applicable.
On appeal, the claimant concedes that Rouse’s Supermarket is entitled to an offset, but questions the computation of the amount of the offset. Specifically, he contends that,
where an employee receives both permanent total workers’ compensation benefits and disability benefits under the Social Security Act, the employer is entitled to a reverse offset only to the extent the benefits are not funded by the employee citing LSA-R.S. 23:1225 C(l).
In Garrett, the court stated:
Because of the 1981 federal cutoff for reverse offsets, the Legislature could not expand Section 1225 A beyond permanent total benefits. Moreover, these two sections provide different types of offsets and benefit ceilings. Section 1225 A coordinates some Louisiana workers’ compensation benefits by means of the federal Social Security offset provisions of 42 U.S.C. Sec. 424a(a) and (d), and imposes the federal ceiling of eighty percent of “average current earnings.” Section 1225 C(l) coordinates Louisiana workers’ compensation benefits with other employer-based benefits, including Social Security benefits, and imposes a separate state ceiling of sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury. Hence, our construction of Section 1225 C(l)(e) as including Social Security disability benefits does not create a conflict with Section 1225 A.
Garrett, 95-0017, p. 11; 660 So.2d at 847.
Clearly, under the Garrett decision, Section 1225 A, rather than Section 1225 C(l), is *1341 applicable to the coordination of permanent total disability benefits and Social Security disability benefits. Fontenot v. Trans Gulf, Inc., 95-0342 (La.App. 1 Cir. 11/9/95); 664 So.2d 1238. Whereas the offset contained in Section 1225 C is granted only to the extent that the disability benefits were funded by the employer, Section 1225 A contains no such language. Therefore, the hearing officer properly applied the offset without considering the contribution of the employee.
Although the claimant recognizes the impact of the Garrett case, he asserts that our prior opinion in this case precludes us from applying Garrett herein. Specifically, he asserts that language in our original opinion requires the application of Section 1225 C(l). He refers to our statement that “[t]he hearing officer should make a determination of what portion of the plaintiffs disability payments are attributable to employee funding and apply the credit accordingly.”
In rendering judgment on remand, the hearing officer, in effect, found that no offset is due the employer under Section 1225 C(l) in this case. As previously stated, this action is consistent with the Garrett case. Furthermore, it is not inconsistent with our original opinion. Therein, this case was remanded to the Office of Workers’ Compensation for the taking of additional evidence and for a determination of the proper offset under the facts of the case. This remand was for more than a mere calculation; rather, we charged the hearing officer with the responsibility of determining the extent to which the employer was entitled to an offset under Section 1225 C(l). See Hilliard v. Shuff, 280 So.2d 845 (La.App. 3 Cir.), writ denied, 282 So.2d 519 (La.1973). See also Grant v. Federal Land Bank, 586 So.2d 685 (La.App. 2 Cir.1991). Clearly, the hearing officer correctly determined that sum to be zero.
The claimant further contends the hearing officer’s calculations are incorrect in that she used the figure $1,396.10 as the total Social Security disability benefit to which Boyd is entitled. In making this assertion, the claimant contends our prior opinion held that Boyd’s total benefit was $422.00. The language from the original opinion on which the appellant relies is as follows:
Boyd applied for and was awarded disability benefits pursuant to the Federal Old Age, Survivor’s and Disability Insurance Benefits, 42 U.S.C. Chapter 7, Sub-chapter II; the payment of benefits commenced in March of 1990. Boyd was also awarded benefits on behalf of his four minor children. He received total monthly benefits of $422.00.
Boyd, 94-1930, p. 2; 665 So.2d at 464.
The claimant’s interpretation of this language is misguided. We stated that Boyd received total monthly benefits of $422.00, not that his total entitlement was $422.00. As stated in the original opinion, Boyd received workers’ compensation and Social Security disability benefits for a period of more that four years before the employer won the right to a reverse offset under the first judgment rendered by the Office of Workers’ Compensation on June 8, 1994. The $422.00 actually received by Boyd during this period is his entitlement less the offset of the Social Security Administration.
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed. Costs are assessed against the appellant.
AFFIRMED.

. LSA-R.S. 23:1225 A provides as follows:
The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker’s compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee’s injury.

. LSA-R.S. 23:1225C(1) provides as follows:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker’s compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wage.