698 So.2d 39 (1997)
Arthur DAVIS, Plaintiff  Appellee,
v.
CAJUN BAG AND SUPPLY CO., Defendant  Appellant.
No. 96-1349.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1997.
*40 Michael Benny Miller, Crowley, for Arthur Davis.
Kenneth O'Neil Privat, Crowley, for Cajun Bag & Supply Co.
Before YELVERTON, THIBODEAUX, SAUNDERS, SULLIVAN and GREMILLION, JJ.
YELVERTON, Judge.
In this workers' compensation proceeding, the employer-appellant asks that we find manifest error and reverse the hearing officer's finding that claimant sustained his burden of proof in establishing a second accident on October 20,1994, and in proving that he is totally temporarily disabled. Additionally, the employer asks that we reverse the finding of liability for penalties, attorney fees and travel expenses associated with claimant's need to obtain medical services. In the alternative, the employer urges that if worker's *41 compensation payments are due, it is entitled to an offset in accordance with La. R.S. 23:1225(C).
We find one error, the failure to recognize that the employer is entitled to an offset. In all other respects the judgment is affirmed. Because of our ruling reversing a part of the award, the claimant is not entitled to any additional fee on appeal.

FACTS
Plaintiff, Arthur Davis, brought this action for workers' compensation benefits against the defendant, Cajun Bag & Supply Co, alleging that he slipped and fell on October 23, 1991. He reported the accident on October 24, 1991. The accident was not witnessed and allegedly occurred on the premises during his break for dinner. Davis continued working until November 17, 1991. On December 17, 1991, Davis filed a Disputed Claim for Compensation (1008). The defendant filed an answer on January 21, 1992. Compensation benefits were commenced January 29, 1992. An informal conference was held on February 11, 1992, at which all parties admitted that compensation was current and that all medical expenses were being paid. Davis was paid indemnity benefits from 1992 to 1994.
In April 1994, Davis returned to work on light-duty status, and at this time, Cajun terminated benefits. Claimant then filed a second accident report on October 20, 1994, alleging that he was injured when a forklift backed into a trash can that hit his chair, reinjuring his lower back that had been injured in the October 23,1991 work-related accident and additionally causing injury to his neck.
This dispute arose when Cajun refused to pay indemnity benefits after the alleged accident on October 20, 1994. A hearing was held and a judgment was rendered in favor of claimant, Arthur Davis, and against the employer, Cajun Bag and Supply Company. The hearing officer found claimant proved that a second accident occurred in October 1994, and that Davis sustained his burden of proving by clear and convincing evidence that he is disabled as a combined result of the 1991 and 1994 accidents. Furthermore, the hearing officer found that claimant was entitled to the following:
(1) Indemnity benefits of sixty-six and two-thirds percent (66 2/3%) of his average weekly wage for the four weeks preceding the 1991 accident, or $113.33 per week, effective from May 27, 1994, to June 15, 1994, and again from October 20, 1994, until the date Davis is able to engage in gainful occupation for wages or self-employment.
(2) Additionally, Davis is entitled to $.24 per mile for each mile traveled to and from the offices of health care providers for related medical care, subject to sufficient documentation being provided to Cajun.
(3) Cajun is to pay the outstanding medical bills of American Legion Hospital, radiologist bill, Crowley Physical Therapy bill, bill of Dr. John Cobb and prescription bills. Additionally, a twelve percent penalty is assessed on the sum total of these outstanding bills, effective from their due date until paid.
(4) That Davis and his attorney be awarded attorney's fees in the amount of $5,000, for the arbitrary and capricious manner in which Cajun handled this claim and for the prosecution of same by Davis.
It is from this judgment that defendant Cajun appeals.

ISSUES PRESENTED
Issues presented by the employer for our review include:
1) Did the plaintiff prove a work-related injury?
2) Did the plaintiff prove that he was disabled?
3) Did the hearing officer properly award penalties and attorney fees?
4) Is the plaintiff receiving social security retirement benefits to which defendant is entitled to an offset?

I. Occurrence Of Accident
In order to recover workers' compensation benefits, an employee must have been injured as the result of an "accident" arising *42 out of and in the course of his employment. La.R.S. 23:1031(A). La.R.S. 23:1021(1) defines "accident" as follows:
[A]n unexpected or unforeseen, actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
Specifically, defendant argues that plaintiff failed to meet his burden of proof in establishing a work-related accident by a preponderance of the evidence. In support of its position, defendant contends that plaintiff failed to comply with the standard enunciated in Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992):
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident.
Defendant contends that the testimony of the two witnesses to the alleged accident, Mr. Jimmy Kuffler, driver of the forklift, and Ms. Christina Reed Beard, supervisor of all sewing operations, suggests that no accident or injury could have occurred the way plaintiff claims and thus the hearing officer committed manifest error in finding that a second accident occurred on October 20, 1994.
We disagree. While neither Mr. Kuffler, the operator of the forklift, nor Ms. Reed testified that they saw Davis fall out of his chair or saw Davis jerk his neck, their version of what occurred corroborated Davis' story that the forklift hit the garbage can that rubbed against the back of the chair in which he was seated, thus establishing an unexpected or unforeseen, actual, identifiable precipitous event happening suddenly, due to the fault of Mr. Kuffler. Moreover, while Mr. Kuffler initially denied that the can pushed up against the chair with any force, he later acknowledged that it would have been difficult for him to tell exactly how much force the can exerted on the back of the chair due to the fact that he was on the machinery at the time of the incident. Finally, the fact that Mr. Kuffler testified that the trash can stood approximately shoulder height when sitting supports a conclusion that the impact of the can could have caused an injury to Davis' neck and aggravated his lower back.
In light of the above, we conclude that the hearing officer was not manifestly erroneous in determining that Davis met his burden of proving an accident by a preponderance of the evidence.

II. Temporary Total Disability
The burden of proof required of a claimant to recover temporary total disability (TTD) benefits is set forth in Carrier v. Debarge's College Junction, 95-18, p. 4-5 (La.App. 3 Cir. 9/27/95); 673 So.2d 1043, 1047, writ denied, 96-472 (La.4/8/96) 671 So.2d 337, which is cited by appellant:
Entitlement to workers' compensation benefits is based on the claimant's ability or inability to earn wages. An employee seeking temporary total disability (TTD) benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c). The new "clear and convincing" standard is a heavier burden of proof than the usual civil "preponderance of the evidence" standard, but it is less burdensome than the "beyond a reasonable doubt" standard of the criminal law. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. (Citations omitted.)
After reviewing the facts in the record, which are set forth below, we find that Davis has carried his burden of proof.
Dr. John Cobb, an orthopedic surgeon, testified that he first treated Davis for an injury sustained in 1991. Initially, Dr. Cobb saw Davis in February 1992 who related complaints in his back and of problems sitting and standing. As a result of this visit and various testing procedures, Davis underwent *43 surgery performed by Dr. Cobb. Eventually, he returned to work under the authorization of Dr. Cobb to light-to-medium type work-related activity. Due to continued pain, Davis returned to Dr. Cobb's office and advised him of the pain he continued to experience. The next time Dr. Cobb saw Davis was on November 7, 1994, after the alleged accident of October 20, 1994. This time, Dr. Cobb examined him and found that X-rays reviewed on October 21,1994, demonstrated spondylosis in both the cervical and lumbar area. At this point, Dr. Cobb thought that Davis had sustained an injury to his neck and back. He recommended physical therapy, gave Davis a prescription, and additionally told Davis that it was not in his best interest to return to work.
On December 12, 1994, Dr. Cobb again saw Davis and noted that there was no change as to his potential ability to return to work. On January 4,1995, Davis reported to Dr. Cobb that he was still having problems with his neck, and Dr. Cobb gave him an injection in his right trapezius muscle and ordered that he attend therapy for approximately three weeks. On February 2, 1995, Dr. Cobb reported that Mr. Davis was making progress, however, he was not released to return to the workplace, but instead was ordered to continue physical therapy. After an examination in March of 1995, Dr. Cobb was optimistic and opined that with more physical therapy, he was convinced that Davis could return to light-duty work. However, at that time, Dr. Cobb did not release him to return to the workplace. On April 12, 1995, Dr. Cobb referred Davis to Dr. Hodges, a physiatrist, for a physical medicine rehabilitation evaluation to determine his work status. However, on May 9, 1995, Dr. Cobb received correspondence from Dr. Hodges that the workers' compensation insurer denied his appointment.
The hearing officer was presented with the uncontested testimony of Dr. Cobb and the testimony of Davis himself. Based on the strength of the uncontested testimony of Dr. Cobb, we find that the hearing officer did not err in finding that Mr. Davis was temporarily totally disabled.

III. Entitlement to Offset
Next, defendant argues that it is entitled to an offset under La.R.S. 23:1225 for the social security benefits being paid to Davis. We agree.
La.R.S. 23:1225(C)(1) provides:
C. (1) If an employee receives a remuneration from:
(a) Benefits under the Louisiana Worker's Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from subparagraphs (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of his average weekly wages.
The issue is whether an employer can claim an offset for old age social security benefits that the claimant was drawing before his employment with this defendant. This defendant had never contributed anything to the employee's old age account. Nevertheless, the law is clear that the employer is entitled to the offset.
In three recent third circuit cases, Duke v. Rapides Senior Citizens Center, 94-621 (La. App. 3 Cir. 12/7/94); 647 So.2d 648, writ denied, 95-55 (La.3/17/95); 651 So.2d 268; Town of Berwick v. Justilian, 93-854 (La. App. 3 Cir. 3/2/94); 634 So.2d 1365; and City of Pineville v. Coleman, 93-944 (La.App. 3 Cir. 4/6/94); 635 So.2d 583, this circuit concluded that the employer was entitled to such an offset. Support for these decisions can be found in the Supreme Court decision of Garrett v. Seventh Ward General Hosp., 95-17 (La.9/22/97); 660 So.2d 841. Garrett, 660 So.2d at 847, says this statute (part of the 1983 amendments) was intended "to reduce *44 employers' compensation liability." The statute was designed to preclude duplication of benefits. Moreover, as to La.R.S. 23:1225(C)(1)(b) itself, which deals with old age benefits, Garrett, 660 So.2d at 846, says it "expressly allows such an offset when the employee is collecting old-age benefits under the Social Security Act." Further the limitation of the credit for old-age social security benefits to those "not funded by the employee" does not eliminate the credit; it merely expresses the limit from the employee's perspective. The fact that the employee was already drawing social security before he had his accident, and before he went to work for this employer, makes no difference. The employer is entitled to an offset.

IV. Penalties and Attorney Fees
The obligations imposed upon an employer in dealing with its employees injured in the course and scope of his employment entitles the employee not only to wage replacement compensation in accordance with La.R.S. 23:1221, but also to vocational rehabilitation in accordance with La.R.S. 23:1226 and medical treatment and mileage reimbursement as required by La.R.S. 23:1203.
Claimant sustained two injuries. The first occurred on October 23, 1991, and the second occurred on October 20, 1994. Under La. R.S. 23:1201(B), the first installment of compensation benefits was due on the fourteenth day after the employer had knowledge of the employee's injury. Failure to comply with this provision results in a twelve percent penalty. La.R.S. 23:1201(E).
The testimony of Ms. Charmaine Martin, Manager of Human Resources at Cajun, clearly indicated that it failed to timely pay workers' compensation benefits due Davis for the interim period of May 27,1994, through June 15, 1995. Clearly, Davis' employer, Cajun, failed to comply with the statutory time limit provided and as such should be assessed a penalty.
The controlling legislation in effect at the time of plaintiff's second injury was La. R.S. 23:1201(E), as amended in 1992, which reads in part as follows;
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate. (Emphasis ours).
According to the amendment, compensation benefits must be commenced in most cases on the fourteenth day after the employer has knowledge of its employee's injury. La.R.S. 23:1201(B) and (C). While the amendment added failure to pay medical benefits as a penalty item, it refers to the time limits set forth in La.R.S. 23:1201(B), (C), and (D). The problem with this reference is that nowhere in these sections are medical benefits mentioned. Instead, they all apply to the time limits for payment of compensation. Thus, from January 1, 1993, through June 29, 1995, we had a prohibition, but no time limit. However, by Acts 1995, No. 1137, § 1, effective June 29, 1995, in an apparent effort to cure the problem, the legislature rewrote La.R.S. 23:1201(E) and moved that which had been previously in that section into what is now 23:1201(F). La.R.S. 23:1201(E) now reads as follows:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
Since defendant's failure to pay medical benefits due far exceeded the sixty-day limit applicable under the current legislation, we find that the employer failed to timely pay such expenses and was arbitrary and capricious in doing so. The employer's or insurer's failure to comply with these timetables *45 mandates assessment of a penalty in an amount equal to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day capped at a maximum of $2,000 in the aggregate for any claim, together with reasonable attorney fees for each disputed claim.
The record reflects that the defendant refused to cooperate with claimant since the October 20, 1994 accident. The testimony of Ms. Charmaine Martin, Manager of Human Resources, clearly indicates that claimant's employer failed to timely pay the following: payments to American Legion since October 21, 1994, in the amount of $364, a radiology bill in the amount of $86, mileage bills submitted in the amount of $113.76, medical prescription bills in the amount of $274.76, a $330 balance of the physical therapy bill at the Crowley Physical Therapy Clinic, and finally, payment to Dr. Cobb for medical treatment in the amount of $701.40.
In addition to its failure to timely pay medical benefits, the employer and insurer failed to timely pay claimant's compensation benefits.
The determination of whether an employer should be cast with penalties and attorney's fees is essentially a question of fact and the trial court's finding shall not be disturbed absent manifest error.... In awarding statutory penalties, the test to be applied is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Attorney fees, on the other hand, are to be imposed if the insurer is found to be arbitrary, capricious or without probable cause in its failure to pay a claim within 60 days after receipt of written notice of the claim. LSA R.S. 23:1201.2. A worker's compensation claim is "reasonably controverted," precluding imposition of penalties, if the employer had sufficient factual and medical information upon which to base a decision to reduce or terminate benefits. (Citations omitted.)
Menard v. Winn Dixie Louisiana, Inc., 93-1497, p. 14 (La.App. 3 Cir. 6/1/94); 640 So.2d 775, 784.
It is evident after reviewing the record that neither the employer nor his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by Davis. The employer did not send Davis to a physician of its choice to evaluate the extent of his injuries, and in fact its refusal to compensate Davis stemmed from the employer's belief that no accident occurred on the date of October 20, 1994. As previously noted, the record is replete with testimony from Dr. Cobb, Davis' physician of choice, that he sustained an injury related to the accident of October 20, 1994, which has rendered him unable to return to the workplace. Moreover, the employer's refusal to pay for a physical medicine rehabilitation evaluation by Dr. Hodges to determine Davis' work status precluded him and still precludes him from a release to return to the workplace.
The hearing officer, in her judgment, assessed the defendant with a twelve percent penalty on the sum total of the outstanding medical bills effective from their due date until paid. However, the judgment does not assess a penalty for failure of the employer/insurer to timely pay compensation benefits. We do note however, that while the judgment does not speak to a penalty for failure to timely pay compensation benefits, the hearing officer in her written reasons for judgment dated July 19,1996, did provide for a penalty on outstanding indemnity benefits as follows:
Davis is entitled to a penalty of twelve (12%) percent on the outstanding indemnity benefits owed to him, from the due date until paid, plus legal interest from the date of judicial demand until paid. Additionally, Davis is entitled to a twelve (12%) percent penalty on the sum total of the following bills: American Legion Hospital bill of $364.00; the radiologist bill of $86.00; the Crowley Physical Therapy bill of $330.00; the $701.40 due Dr. John Cobb; and the prescription bills of $274.76.
While a trial court may amend a final judgment on its own or by the motion of any party to alter the phraseology, it cannot change the substance of the judgment. Rodgers v. Rodgers, 26,093 (La.App. 2 Cir. *46 9/21/94); 643 So.2d 764. However, when an error of substance exists in a final judgment, that error may be corrected only by the filing of a timely motion for new trial or appeal. Id. Because neither party to this appeal specifically requests that the judgment be amended on appeal to correct the penalty assessed by the hearing officer's written reasons for judgment, we cannot address the issue.
As to the award of attorney's fees, we find that the hearing officer did not err in awarding $5,000.00 in attorney's fees due for the arbitrary and capricious manner in which Cajun handled this claim and for the time spent for the prosecution of this case.

DECREE
For the foregoing reasons, the judgment of the hearing officer is affirmed in all respects except the denial of the offset. We hold that the employer is entitled under Section 1225(C)(1)(b) to an offset of social security old-age benefits. Given the lack of evidence in the record for a determination of the amount of the credit, we will remand for that determination.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
THIBODEAUX, J., dissents in part and concurs in part and assigns reasons.
SAUNDERS, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, Judge, dissenting and concurring.
Louisiana Revised Statute 23:1225(C)(1) was indeed designed to preclude the duplication of benefits. It includes a provision under subsection b which applies the statute to "old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee." However, the statute does not indicate whether it applies to the receipt of old-age benefits pre or post-employment. The majority says this distinction is irrelevant. I disagree.
The Louisiana Supreme Court has provided some guidance in interpreting wage-loss benefits laws in Garrett v. Seventh Ward General Hospital, 95-17 (La.9/22/95); 660 So.2d 841. These laws, such as La.R.S. 23:1225, are designed
"... to preclude an employee from contemporaneously collecting duplicative wage-loss benefits under different parts of the overall system of employer-based protection against loss of wages. Benefit coordination laws are based on the premise that an employee experiencing a period of wage loss should not be permitted to receive duplicative benefits from different parts of the overall system provided by the employer and thereby recover more than the amount of his or her actual wages...."
Id. at 843 (emphasis supplied). In this case, the employee is receiving duplicative benefits but those benefits are not provided by his current employer and the employee in this case is not recovering more than the amount of his or her actual wages. In fact, the employee is receiving less after his injury than he was receiving prior to the injury because of the application of the offset. This, in my view, is unfair and subverts the statute's intent and the rationale underlying Garrett.
The majority correctly points out that our circuit has on at least three occasions held that the employer is entitled to an offset. I recognize those cases, Duke v. Rapides Sr. Citizens Center, 94-621 (La.App. 3 Cir. 12/7/94); 647 So.2d 648, writ denied, 95-55 (La.3/17/95); 651 So.2d 268; Town of Berwick v. Justilian, 93-854 (La.App. 3 Cir. 3/2/94); 634 So.2d 1365; and, City of Pineville v. Coleman, 93-944 (La.App. 3 Cir. 4/6/94); 635 So.2d 583, for what they hold and further recognize that I voted with the majority in Town of Berwick v. Justilian. Those cases were erroneously decided. On reflection, my vote in Town of Berwick v. Justilian was erroneous and unfortunate. This miscarriage of justice should be corrected, perhaps by an en banc sitting of this court.
For the foregoing reasons, I respectfully dissent. In all other respects, I concur.
*47 SAUNDERS, Judge, concurring in part and dissenting in part.
I do not feel that a social security offset is appropriate in this case. In examining the statute, I feel that a far more reasonable interpretation would honor the recognized legislative policy enunciated in Garrett v. Seventh Ward General Hosp., 95-17, pp. 3-4 (La.9/22/95); 660 So.2d 841, 843, where the Louisiana Supreme Court defined the purpose of wage-loss benefit laws:
Wage-loss benefit coordination laws are designed to achieve a dual purpose: (1) to assure, when an employee suffers a wage loss because of disability, unemployment, advanced age or death, that a certain minimum portion of the employee's actual wages is continued or, in the case of death, that the employee's dependents receive some degree of recovery of lost support; and (2) to preclude an employee from contemporaneously collecting duplicative wage-loss benefits under different parts of the overall system of employer-based protection against loss of wages. Benefit coordination laws are based on the premise that an employee experiencing a period of wage loss should not be permitted to receive duplicative benefits from different parts of the overall system provided by the employer and thereby recover more than the amount of his or her actual wages. The theory is that an employee experiencing only one wage loss should be entitled to receive only one wage-loss benefit from the employer. Benefit coordination laws thus avoid duplicative benefits collected from the employer and prevent social legislation from becoming a "grab bag" of assorted, unrelated wage-loss benefits. 4 Arthur Larson, Worker's Compensation § 97.10 (1995).
It is my view that the legislative authorization of La.R.S. 23:1225(C), which allows an employer an offset for old age benefits, does not include a case where retirement benefits were already being received in addition to wages at the time of injury, but applies only under circumstances where the present employer has contributed to the social security of the employee and such employee is not presently in receipt of Old Age Social Security Benefits. To construe the statute otherwise allows the employer an offset against social security benefits that the plaintiff was already receiving which was funded by the employee and his previous employer.
In all other respects, I agree with the majority opinion.